[Civ. No. 28128.   Second Dist., Div. Four.   July 23, 1965.]

WILLIAM M. KECK, JR., as Executor, etc., et al., Plaintiffs
    and Respondents, v. ALAN CRANSTON, as Controller,
    etc., Defendant and Appellant.

Charles J. Barry, Walter H. Miller and Margaret Groscup for Defendant and Appellant.

Latham & Watkins, A. Richard Kimbrough and Alan N. Halkett for Plaintiffs and Respondents.

KINGSLEY, J.—Plaintiff filed an action for refund of a gift tax paid by him to the State of California. This is an appeal by the Controller of the State of California from the judgment entered in the above entitled action in favor of plaintiff and against the defendant on October 3, 1963.

The issue which is presented for decision on this appeal is whether or not the plaintiff, on or about December 12, 1958, made a transfer of the remainder interest in the then existing principal of the trust subject to the California Gift Tax Act, within the meaning of California Revenue and Taxation Code sections 15101 et seq., when he renounced all of his rights to direct payment of the trust corpus to the life in-

come beneficiary, Howard Keck, and also renounced all power to name himself trustee of the trust.

On December 6, 1933, plaintiff executed a written declaration of trust and transferred assets to the trustee, without consideration. Under the terms of the trust instrument, the income was to be paid unconditionally to Howard Keck (son of the trustor) for his life, and he was given a testamentary power to appoint income to his issue in the event of his death prior to the termination of the trust. Howard Keck was also given a testamentary power to appoint corpus. In default of appointment, income was to be paid to, and corpus was to be distributed to, the issue of Howard Keck.

Paragraph VII of the declaration of trust provided that, anything in the declaration of trust to the contrary notwithstanding, the trustor, and after his death a majority of named individuals, reserved the right to direct payment of all or a part of the corpus to Howard Keck. The trust was declared to be irrevocable.

On or about November 13, 1958, the plaintiff executed a "Statement of Clarification and Renunciation" whereby he renounced, cancelled and terminated all right given him by paragraph VII of said declaration of trust.

On or about April 13, 1959, plaintiff filed a gift tax return, wherein the value of the remainder interest in the trust corpus, as of November 13, 1958, was reported as a transfer in equal shares by plaintiff to the then three living children of Howard Keck.

Thereafter plaintiff filed a claim for refund of the tax, which claim was denied by the State Controller, and a gift tax determination was made by the State Controller. The gift tax, as determined by the State Controller, was fully paid by plaintiff.

The only issue in this case is whether William Keck made a taxable gift in 1958 by renouncing the power to cause the trust corpus to be paid outright to the life income beneficiary who had previously been given the power to dispose of it by will.

Plaintiff contends that, if the Gift Tax Act had been in effect at the time the trust was created, there would have been gift tax payable at that time on the remainder interests. Thus, plaintiff contends that to tax the renunciation of the power held by William Keck in 1958 would be tantamount to the collection of a retroactive gift tax on the same inter-

ests—a tax prohibited by California Revenue and Taxation Code section 15202.

The Controller argues that the provisions of the California law should be construed in a manner which would accord with the federal law[1] and that the history of the development of that law in this area supports the conclusion above stated.

For the reasons set out below, we conclude that the Controller's contention is correct and that plaintiff's contention is incorrect and that no tax was due or payable under the California law until 1958, when the trustor finally divested himself of all power to control the disposition of the remainder interest in the trust estate.

## I

So far as herein material, the federal history starts with the decision of the United States Supreme Court in *Burnet* v. *Guggenheim* (1932) 288 U.S. 280 [53 S.Ct. 369, 77 L.Ed. 748]. That case sustained, as declaratory of the congressional intent in adopting the 1924 statute, a regulation of the Commission of Internal Revenue promulgated in November 8, 1924, which read as follows: "The creation of a trust where the grantor retains the power to revest in himself title to the corpus of the trust, does not constitute a gift subject to tax, but the annual income of the trust which is paid over to the beneficiaries shall be treated as a taxable gift for the year in which so paid. Where the power retained by the grantor to revest in himself title to the corpus is not exercised, a taxable transfer will be treated as taking place in the year in which such power is terminated." (Regulation 67, article I.)

After pointing out that the substance of this regulation had been carried forward into the Revenue Act of 1932,[2] the

---

[1] "[I]n view of the fact that material provisions of the federal statute and the state act are substantially identical, decisions interpreting the federal law furnish a guide in construction of the state act." (*Gregory* v. *State of California* (1946) 77 Cal.App.2d 26, 29 [174 P.2d 863, 175 P.2d 542]; *Douglas* v. *State of California* (1942) 48 Cal.App.2d 835, 838 [120 P.2d 927].)

[2] Revenue Act of 1932, c. 209, 47 Stat. at L. 169, 245, § 501(c): "The tax shall not apply to a transfer of property in trust where the power to revest in the donor title to such property is vested in the donor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such property or the income therefrom, but the relinquishment or termination of such power (other than by the donor's death) shall be considered to be a transfer by the donor by gift of the property subject to such power, and any payment of the income therefrom to a beneficiary other than the donor shall be considered to be a transfer by the donor of such income by gift."

court went on to state, at pages 285-286, that: "Congress did not mean that the tax should be paid twice, or partly at one time and partly at another. If a revocable deed of trust is a present transfer by gift, there is not another transfer when the power is extinguished. If there is not a present transfer upon the delivery of the revocable deed, then there is such a transfer upon the extinguishment of the power. There must be a choice, and a consistent choice, between the one date and the other. To arrive at a decision, we have therefore to put to ourselves the question, which choice is it the more likely that Congress would have made? Let us suppose a revocable transfer made on June 3, 1924, the day after the adoption of the Revenue Act of that year. Let us suppose a power of revocation still uncanceled, or extinguished years afterwards, say in 1931. Did Congress have in view the present payment of a tax upon the full value of the subject matter of this imperfect and inchoate gift? The statute provides that upon the transfer by gift the tax upon the value shall be paid by the donor [citations], and shall constitute a lien upon the property transferred. [Citations.] By the act now in force, the personal liability for payment extends to the donee. [Citations.] A statute will be construed in such a way as to avoid unnecessary hardship when its meaning is uncertain. [Citations.] *Hardship there plainly is in exacting the immediate payment of a tax upon the value of the principal when nothing has been done to give assurance that any part of the principal will ever go to the donee.* The statute is not aimed at every transfer of the legal title without consideration. Such a transfer there would be if the trustees were to hold for the use of the grantor. *It is aimed at transfers of the title that have the quality of a gift, and a gift is not consummate until put beyond recall.*" (Italics added.)

Before the Supreme Court heard the *Burnet* case, the federal government had enacted another gift tax act in 1932, which contained, as section 501(c) the provision above quoted. After the *Burnet* decision, that subsection was repealed as unnecessary in the light of the *Burnet* holding. (Revenue Act of 1934, § 511.) In 1937, in *Hesslein* v. *Hoey* (2d Cir. 1937) 91 F.2d 954, the court was called on to construe the 1932 act as thus amended. The question presented in that case was whether the creation of a trust for donee beneficiaries, in which the settlor reserved power to alter the trust in any manner not beneficial to himself or his estate was a transfer subject to the federal gift tax under the Revenue Act of 1932 as amended. The restriction that the alteration of

the trust must not revest in the settlor or his estate prevented the reserved power from being as absolute as that considered in the *Burnet* case but brings it in line with the facts of the instant case.

In affirming the judgment of the lower court in *Hesslein,*—namely, that the reservation of these powers by the settlor prevented the transfer from constituting a taxable gift as of the time the trust was set up—the court stated, at page 956: "Since the primary purpose of the gift tax statute is to supplement the estate tax statute, it is reasonable to construe the former as excluding gifts so incomplete by reason of powers reserved to the donor, as to be expressly made subject by the latter to the estate tax. Section 302 (d), Revenue Act 1926 (44 Stat. 70, 71). It is true that the two statutes are not mutually exclusive in all cases. . . . In our opinion, for the reasons already stated, section 501 was not intended to impose a gift tax with respect to the corpus of such a trust as the plaintiff created in 1934. If during his life he shall terminate his reserved powers, a gift tax will then accrue. If they are terminated by his death, the property will be subject to an estate tax."

In 1939, the Supreme Court rendered its decision in *Estate of Sanford* v. *Commissioner of Internal Revenue* (1939) 308 U.S. 39 [60 S.Ct. 51, 84 L.Ed. 20], rehearing denied 308 U.S. 637 [60 S.Ct. 258, 84 L.Ed. 529]. This case presented a single question of statutory construction of the 1924 Federal Gift Tax Act: Whether, in the case of an *inter vivos* transfer of property, in trust, by a donor reserving to himself the power to designate beneficiaries other than himself, the gift became complete and subject to the gift tax imposed by the federal revenue laws at the time of the relinquishment of the power. In the *Sanford* case, the relinquishment of the power came at death. The court stated at pages 42-44: "When the gift tax was enacted Congress was aware that the essence of a transfer is the passage of control over the economic benefits of property rather than any technical changes in its title.

". . . . . . . . . . . .

"The rule was thus established, and has ever since been *consistently followed by the Court,* that a transfer of property upon trust, with power reserved to the donor either to revoke it and recapture the trust property or to modify its terms so as to designate new beneficiaries other than himself is incomplete, and becomes complete so as to subject the transfer to death taxes only on relinquishment of the power at death.

"There is nothing in the language of the statute, and our attention has not been directed to anything in its legislative history to suggest that Congress had any purpose to tax gifts before the donor had fully parted with his interest in the property given, or that the test of completeness of the taxed gift was to be any different. . . ." (Italics added.)

## II

Plaintiff contends, however, that the California Legislature enacted statutes which were intended to countermand the holding in *Hesslein* as far as the California gift tax was concerned and that the state and federal statutes differ in important details.

In 1939, the California Legislature enacted the Gift Tax Act. Two provisions of the Gift Tax Act, California Statutes, chapter 652, are particularly relevant to the present case: "Sec. 37. The tax does not apply to a transfer of property in trust where the power to revest in the donor title to the property is vested in the donor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the property or the income therefrom. However, the relinquishment or termination of such power, other than by the donor's death, a transfer by the donor by gift of the property subject to the power, and any payment of the income from the property to a beneficiary other than the donor is a transfer by the donor of such income by gift."

"Sec. 67. When property is transferred in trust or otherwise, and the rights, interests or estates of the transferee are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended, or abridged, a tax shall be imposed upon said transfer at the highest rate which, on the happening of any of the said contingencies or conditions, would be possible under the provisions of this act, and such tax so imposed shall be payable in full out of the corpus of the property transferred and shall not be charged against the interest of or collected from the beneficiaries thereof; provided, however, that on the happening of any contingency whereby the said property, or any part thereof, is transferred to a person exempt from taxation under the provisions of this act, or to any donee taxable at a rate less than the rate imposed and paid, the person who paid the tax, his heirs, executors, or assigns, is entitled to a refund of that part of the tax imposed and paid represented by the

difference between the amount paid and the amount actually payable under the provisions of this act. . . .''

The substance of these two provisions is now contained in sections 15105, 15210 and 15903 of the Revenue and Taxation Code.

Plaintiff argues that one of the reasons given by the federal courts for holding that a gift subject to being divested by act of the donor was not taxable was the fact that a contrary holding would subject a donee to a tax on a gift which he might later lose at the whim of the donor, and that since, by the provisions of section 67, that result could not occur in California, the reason for the federal rule did not exist in California and the federal rule was thus inapplicable. However, the unfairness of imposing a tax on a donee in such cases was only one of the reasons relied on for the federal rule. We think that the more important reason for the federal rule was that set out at the end of the quotation above given from *Burnet*: ''The statute is not aimed at every transfer of the legal title without consideration. . . . It is aimed at transfers of the title that have the quality of a gift, and a gift is not consummate until put beyond recall.'' (*Burnet* v. *Guggenheim, supra,* (1932) 288 U.S. 280, 286.)

Nor does this construction leave section 67 without purpose—there are many transfers in trust where an interest may be divested by contingencies other than the action of the trustor; section 67 serves a real purpose as applied to such situations without affecting the problem now before us.

### III

Plaintiff also argues, and the trial court agreed, that the doctrine of *expressio unius est exclusio alterius* requires a rejection of the federal rule. He points out that the 1924 act construed in *Sanford,* and the 1932 act as amended construed in *Hesslein,* contained no statutory exceptions, whereas section 37 of the California Gift Tax Act contains a single express exception to the general rule of taxing gifts in trust when the trust is created—namely the case where the trustor has retained a power to revest the trust property in himself. From this he argues that the California Legislature intended to make all other contingent gifts immediately taxable. However, the doctrine relied on is not one of automatic or universal application. Here we think there are valid reasons for not applying it.

The consistent position of the federal courts in the *Burnet* and *Hesslein* cases, and the legislative history of the federal

gift tax laws were available to the California Legislature at the time the California Gift Tax Act became law; it may be presumed that the California Legislature intended that a gift should not be regarded as completed until the donor had relinquished the power to determine the person in whom possession and enjoyment of the property interest should vest.

The court in *Douglas* v. *State of California* (1942) 48 Cal. App.2d 835, 839 [120 P.2d 927], stated, in interpreting the *Burnet* and *Sanford* cases, that: "The theory of these cases is that while the trustor retains such power over the trust, the transfer is as to the beneficiaries incomplete and inchoate. The cases emphasize the essence of a transfer for purposes of taxation is the passage from the trustor of control over the economic benefits of property, rather than any technical changes in its title. While the grantor retains the right to revoke or amend the trust he has not parted with economic control of the property in the analysis of these cases."

The power to revest title in the donor results in an incomplete gift. But the legal reason for holding that such a power renders the gift incomplete is that in this area of law the essence of a transfer has come to be identified with a relinquishment of control over the economic benefits by the settlor.

Furthermore, it seems to be more clearly the case that the California Legislature in adopting section 37 (now section 15105 of the Revenue and Taxation Code) intended that in doing so it was acting in accord with the holding of *Hesslein* rather than intending the opposite as plaintiff maintains. At the time the *Hesslein* case was decided the federal regulations (article III, regulations 79 under the Revenue Act) read in part as follows: "As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to cause the beneficial title to be revested in himself, the transfer is complete. But a transfer (in trust or otherwise), although passing both legal and beneficial title, is still in essence merely formal so long as there remains in the donor a power to cause the revesting of the beneficial title in himself, and the gift, from the standpoint of substance, remains incomplete during the existence of the power. A donor shall be considered as having the power to revest in himself the beneficial title to the property transferred if he has such power in conjunction with any person not having a substantial adverse

interest in the disposition of the property or the income therefrom."

The first sentence of the above regulation construed section 501 of the Revenue Act of 1932[3] as imposing a gift tax on the transfer of beneficial title at the time the trust was created if the settlor cannot revest title in himself but does retain the power to direct the property to alternate beneficiaries. It was this regulation that was expressly rejected by the court in *Hesslein* v. *Hoey, supra* (2d Cir. 1937) 91 F.2d 954, 956. ■ It is, therefore, important to note that, when section 37 of the 1939 California Gift Tax Act was drafted and adopted, the Legislature incorporated in substance the language of the second sentence of regulation 79 but failed to incorporate the language of the first sentence which dealt with the completion of a transfer whenever the settlor denied himself the power to revest. The Legislature was aware of the holding in the *Hesslein* case. Its failure to adopt that part of regulations 79 which was rejected in *Hesslein* can only lead to the conclusion that the Legislature intended to reject the concept that a transfer was complete although the settlor retained the power to designate alternate beneficiaries.

## IV

■ In 1940, the Controller promulgated the first regulations affecting the newly adopted California law. Rule No. 88 of those regulations (now regulation 15104(j) (4)) provided: "A transfer of property from A to B in trust for the beneficial use of C does not constitute a gift if A reserves the power either to designate a new beneficiary other than himself, or to modify or alter the disposition in any way not beneficial to himself, even though he may in all other respects have surrendered his dominion and control over the property. A gift will occur, however, if A should relinquish the power during his lifetime."

Not only was this an administrative construction of the California act contemporaneous with its adoption, but it is a construction which has stood unchallenged for 25 years. While it is true, as plaintiff argues, that the Controller cannot, by regulation, amend the statute, still where, as here, the construction of the statute made in the regulation is not unreasonable, and where for a quarter of a century the Legis-

---

[3]The gift tax provisions of the Revenue Act of 1932, § 501(a, b), 47 Stat. 245, 26 U.S.C.A. § 550 (a, b), lay a tax "upon the . . . transfer of property by gift," and declare that "The tax shall apply whether the transfer is in trust or otherwise."

lature, with the regulation published and known to it, has not rejected it or amended the statute so as to indicate a contrary intent, the regulation impels, if indeed it does not require, us to give it effect. (*Coca-Cola Co.* v. *State Board of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1].)

V

Plaintiff points out that, after the United States Supreme Court had decided the cases of *Estate of Sanford* v. *Commissioner of Internal Revenue, supra* (1939) 308 U.S. 39, and *Rasquin* v. *Humphreys* (1939) 308 U.S. 54 [60 S.Ct. 60, 84 L.Ed. 77], in which it ruled that there was no taxable transfer under the Federal Revenue Acts if a transferor reserved the power to alter or amend the disposition of the property without benefit to himself, many taxpayers who had relied on the contrary position taken by the Internal Revenue Service and had paid the federal gift tax on trusts with the retained power to alter or amend without benefit to the transferor were placed in an untenable position. If they renounced the power, they would be subject to a second gift tax on the same property; if they did not renounce the power, then they had made no "completed" transfer and the entire value of the trust property would be includible in their estates for purposes of the federal estate tax.

Because of this situation, Congress enacted a relief provision by amending the Internal Revenue Code section 1000(e) to provide, in substance, that if, after January 1, 1940, and prior to December 31, 1947, the transferor relinquished a retained power to alter or amend a trust, then the relinquishment of the power would not result in the imposition of a gift tax. The California Legislature, however, after the decisions in the *Sanford* and *Rasquin* cases, enacted no such relief provisions, or any relief provision whatsoever.

Plaintiff urges us to deduce, from this omission, the conclusion that our Legislature had intended to tax trusts in which the trustor retained a power to alter or amend at the time such trust was created and not at the time the power to alter or amend was relinquished. However, we think that the omission of any provision in California similar to section 1000(e) is attributable to the fact that, while the California rule was the same as that announced in *Sanford* and in *Rasquin,* the practical effect of that rule on existing trusts could not arise in California.

The California law went into effect as to gifts made on or

after 10 p.m., of June 21, 1939. (Rev. & Tax. Code, § 15202.) But returns on gifts made in 1939 were not due until April 15, 1940 (Rev. & Tax. Code, § 15651), and actual payment of the tax was not required until the Controller had made a gift tax determination and given notice. (Rev. & Tax. Code, § 15802.) The regulations, including rule 88 above discussed, were promulgated to take effect on June 1, 1940. Under these circumstances, it seems improbable, if not impossible, that a tax could have been demanded and paid on a theory contrary to that set out in the regulation as adopted. It follows that a risk of double taxation, which the federal provision was designed to remove, never arose in California and no provision comparable to section 1000(e) was either necessary or appropriate.

## VI

Finally, plaintiff makes an analogy to the provisions of the inheritance tax, Revenue and Taxation Code section 13692, wherein it is provided that if a donor (a decedent) gives to one donee a beneficial interest in the property and also a general or limited power of appointment over the same property, the donee is subject to an inheritance tax on the entire value of the property. Plaintiff reasons that if this rule is applied to the gift tax then there was a completed transfer as of the date the trust was established.

However, the analogy is not apt. We deal in this case with a situation in which the interests involved can be divested and regiven at the whim of the donor. But, by the very nature of things, a gift made by will cannot be affected by the whim of a decedent, whose powers over the property have, by the laws of nature, terminated at the time the gift is made.

In short, we adopt a construction of the California Gift Tax Act which makes our law operate in a manner consistent with the federal law on the same transfers, and which is the construction adopted by the officer charged with the administration of that law contemporaneously with its coming into effect and which has been the uniform and unquestioned construction of the statute for 25 years.

The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 15, 1965.