COMMISSIONER OF INTERNAL REVE-
NUE v. HOGLE.

No. 3514.

Circuit Court of Appeals, Tenth Circuit.

Dec. 26, 1947.

Harry Marselli, Sp. Asst. to Atty. Gen., of Washington, D. C. (Theron L. Caudle, Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and Helen Goodner, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

G. A. Marr, of Salt Lake City, Utah (Cheney, Jensen, Marr & Wilkins, of Salt Lake City, Utah, on the brief), for respondent.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

The Commissioner assessed gift taxes against Hogle for the years 1936 to 1941, inclusive. On review, the Tax Court held there were no deficiencies in gift taxes for those years.

The question presented is whether or not annual earnings of two trusts, one known as the Copley Trust, and one known as the Three Trust, during the years in question, from trading in securities and commodities carried on by the trusts under Hogle's direction, amounted to gifts by Hogle to the trusts. These trusts were before this court in Hogle v. Commissioner, 10 Cir., 132 F.2d 66, and the facts with respect to such trusts are there fully set out.

The Copley Trust was created in 1922 by Hogle and his wife for the benefit of their three children. It consisted of a securities trading account to be managed and operated under Hogle's direction, the property accruing to the trust to be divided among the children on April 15, 1945. The trust was irrevocable and Hogle retained no right to alter or amend the trust instrument, or to change the beneficial interests. None of the principal or income could revest in Hogle. It provided that any losses resulting from trading in excess of the "profits and various income returns thereof" should be made good by Hogle, and that any such losses should not become an indebtedness of the trustee or the beneficiaries, but that any such losses made good by Hogle should be returned to him out of the first profits that accrued from further transactions.

On October 7, 1922, a margin account was opened for the trust with J. A. Hogle & Company, a brokerage partnership, consisting of Hogle and his wife, and in which the three children subsequently became partners. The trading resulted in profits in every year, except 1928 and 1929. In those years, certain securities were given to the trust by Hogle and his wife. The profits and benefits in the trust were divided on April 15, 1945, among the three children, and the trust was terminated.

In 1932, Hogle opened a trading account with the partnership in the name of the Three Trust account and a few days thereafter, Hogle and his wife created the Three Trust, consisting of a securities trading account for the benefit of the three children. The trust was irrevocable and was in all respects like the Copley Trust, with the exception it was to terminate on April 15, 1950, and income could be distributed in the meantime in the discretion of Hogle and any two of the three trustees. Although the trading was conducted in the name of the trust, receipts and disbursements were credited and debited to the individual beneficiaries according to the specified share of each during the term of the trust. Gains and profits were realized in every year, including the taxable years.

The net worth of each trust in each of the years for which the gift taxes were assessed was more than sufficient to provide the margins required to cover the trading carried on for it.

In Hogle v. Commissioner, supra, we held, under the doctrine of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L. Ed. 788, that the net income resulting from trading on margin was taxable to Hogle. We do not think it follows, however, that the net income in each of the taxable years derived from trading constituted a gift thereof by Hogle to the trusts.

Section 501 of the Revenue Act of 1932, 47 Stat. 169, as amended by § 511 of the Revenue Act of 1934, 48 Stat. 680, imposed a tax upon the transfer, during the calendar year, of property by gift. Section 1000 of the Internal Revenue Code, 26 U.S. C.A. Int.Rev.Code, § 1000, contains a substantially identical provision and it applies to the calendar year 1940 and subsequent calendar years. And Article 2, Treasury Regulations 79, provides among other things that a gift tax is imposed whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; and further, that the tax applies to all transactions whereby property or property rights or interests are donatively passed or conferred upon another. The purpose of the statute is to reach and lay a tax upon every type and kind of transfer of property by gift.[1] With that legislative purpose in mind, the terms "property," "transfer," "gift," and "indirectly," as used in the statute, should be interpreted in their broadest and most comprehensive sense.[2] But the tax cannot be sustained unless there was a transferor, a transferee, and an effective transfer of title or other economic interest or benefit in property having the quality of a gift.

The net income derived from trading carried on in behalf of the trusts accrued immediately and directly to the trusts, and did not consist of income accruing to Hogle which he transferred by anticipatory gift to the trusts. Hogle never owned or held an economic interest in such income. Likewise, since the funds in the trusts were sufficient to provide the margins required to cover the trading carried on in the taxable years, any losses resulting from trading would have been suffered immediately and directly by the trusts. What, in fact and in reality, Hogle gave to the trusts in the taxable years was his expert services in carrying on the trading, personal services in the management of the trusts. Hogle could give or withhold his personal services in carrying on trading on margin for the trusts. He could not withhold from the trusts any of the income accruing from trading on margin. How could he give what he could not withhold? There was

[1] Robinette v. Helvering, 318 U.S. 184, 187, 63 S.Ct. 540, 87 L.Ed. 700.

[2] Smith v. Shaughnessy, 318 U.S. 176, 180, 63 S.Ct. 545, 87 L.Ed. 690; Commissioner v. Wemyss, 324 U.S. 303, 306, 65 S.Ct. 652, 89 L.Ed. 958, 156 A.L.R. 1022.

no transfer directly or indirectly from Hogle to the trusts of title to, or other economic interest in, the income from trading on margin, having the quality of a gift. In short, there was no transfer directly or indirectly by Hogle to the trusts of property or property rights.

The Commissioner places strong reliance upon Hogle v. Commissioner, supra, to sustain the contention that the income arising from the trading on margin represented personal earnings of Hogle; and that Hogle in substance gave to the trusts the profits derived from part of his individual efforts. Certain excerpts from the opinion are emphasized in support of the argument that the net income arising from the trading on margin for the benefit of the trusts represented earnings of Hogle, and that, upon the accrual of such income to the trusts, a transfer having the quality of a gift was effectuated within the meaning of §§ 501 and 1000, supra. But, we think a critical reading of the opinion in that case in its entirety will indicate that it does not support the Commissioner's contention. While the court drew a distinction between the income tax liability of Hogle on profits accruing to the trusts from trading on margin and gains accruing to the trusts from other sources, and held that he was liable for the tax on net income derived from such trading but not on gains accruing from other sources, his liability for tax on the net income derived from trading on margin was predicated upon his power to control indirectly the extent of the profit derived from such trading by determining the extent and amount of such trading. Despite certain statements contained in the opinion on which the Commissioner relies, the basis of the holding that Hogle was liable for income tax on the net income resulting from trading on margin was his power to control the extent of such trading and therefore the extent of the income therefrom. It was predicated on his power to dominate the amount of income that would accrue from trading. That was the essence of our holding. We did not hold that such income accrued first to Hogle and was by him transferred by anticipatory gift to the trusts.

Our holding in Hogle v. Commissioner, supra, was an extreme application of the doctrine of the Clifford case, supra. To hold that the profits accruing from trading in margins constitute gifts from Hogle to the trusts, we think, would be an unjustified extension of the doctrine of the Clifford case.

Affirmed.

HUXMAN, Circuit Judge, concurs in the result.