**Lester CROWN, Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**No. 77–1898.**

United States Court of Appeals,
Seventh Circuit.

Argued April 7, 1978.

Decided Sept. 19, 1978.

Rehearing and Rehearing En Banc
Denied Nov. 30, 1978.

M. Carr Ferguson, Asst. Atty. Gen., Tax Dept., Dept. of Justice, Washington, D. C., for respondent-appellant.

Byron S. Miller, Chicago, Ill., for petitioner-appellee.

Before SPRECHER and WOOD, Circuit Judges, and VAN PELT, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

The primary question presented in this appeal is whether a taxpayer who lends money to his children and other close family members in the form of no-interest loans

---

* The Honorable Robert Van Pelt, Senior United States District Judge for the District of Nebraska, sitting by designation.

and open accounts payable on demand must include in the computation of gifts taxable during a particular tax year the value of the interest foregone on the indebtedness outstanding during that year. The tax court ruled in favor of the taxpayer's argument that no taxable gift occurred. We affirm.

As the relevant facts have been set out in the Tax Court's opinion in this case reported at 67 T.C. 1060 (1977), we need only briefly summarize them here. Appellee is an equal partner along with his two brothers in Areljay Company, Not Incorporated ("Areljay"). Prior to and during 1967, Areljay made loans totaling approximately $18 million to a series of 24 trusts that had been established for the benefit of the children and other close relatives of the three brothers. The loans were made to enable the trusts to acquire interests in another investment partnership known as Henry Crown and Company (Not Incorporated) ("HC Not Inc."). Approximately 13% of the trusts' indebtedness to Areljay was represented by notes payable on demand. The remaining 87% consisted of loans on open account. Neither the open accounts nor the demand notes contained any provision for the payment of interest except after demand. Nor was any interest paid on the outstanding balances of the loans during the tax year in question.

In the notice of deficiency sent to the appellee on November 30, 1973, the Commissioner of Internal Revenue determined that the loans to the trusts resulted in gifts from the Areljay partners in 1967 in the amount of $1,086,407.75, one-third of which was allocated to the appellee. In calculating the amount of the gifts the Commissioner applied an interest rate of 6% per annum to the daily balance of the loans outstanding during the year. The Commis-

sioner theorized that the loans involved the transfer of a valuable property right to the trusts equal to the market rate of interest charged on similar loans. After the matter was heard by the Tax Court, a decision was filed on March 31, 1977, holding that the appellee could not be subject to the gift tax on his proportionate share of the partnership's outstanding loans because the making of non-interest-bearing loans under these circumstances is not a taxable event. There were three dissenters. This court has jurisdiction over the Commissioner's appeal under Section 7482(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 7482(a).

The Commissioner begins his argument for finding a gift in these loans with the proposition that the granting of a loan over a period of time at less than the true economic rate of interest bestows an economic benefit on the recipient. As with any productive asset the ability to employ that asset in productive activity gives rise to "income" in an economic sense.[1] When money is loaned at zero interest over a period of time the recipient is enriched by the amount of income that the money generates for him. At the same time, the person who lends the money is poorer by the amount of interest foregone. His nominal wealth may not decline, but he misses out on a chance to increase his net worth. This is the "opportunity cost" of his loan. In order for an economic benefit to be transferred to the recipient, it is not necessary that the interest rate be set at zero, but only that the interest rate on the loan be less than the appropriate market rate of interest at the time.

The Commissioner argues that this transfer of economic benefit by means of interest-free loans is inimical to the two major purposes of the gift tax statute—protection of the income tax and the estate tax.[2] The

---

1. Even with consumption rather than production goods, the use thereof gives rise to "income" during the period of use if one employs the economic definition of income as the sum of consumption during the period plus the net change in wealth.
2. Petitioner argues that protection of the income tax is only a "natural consequence" of

the gift tax rather than one of its purposes. But there is authority to the contrary. With regard to the 1932 Act, see 65 Cong.Rec. 3120, 8095–96; H.R.Rep.No. 708, 72d Cong., 1st Sess. (1932); S.Rep.No. 665, 72d Cong., 1st Sess. 40 (1932). See generally Lowndes, Kramer & McCord, Federal Estate and Gift Taxes, §§ 22.2 and 26.15 (3d ed. 1974); Harris, Legislative

argument is clearly correct with respect to the income tax, a fact which the Tax Court majority failed to note. The concern here is that people will use gifts of income producing property to split up an income taxable in a high tax bracket into smaller incomes taxable in lower brackets. No-interest loans do just that.[3] Moreover, where the loans are payable on demand, the maker of the loans is able to achieve this result without the inconvenience of losing access to the principal should the need arise. The situation with regard to the estate tax is more complex. Because of the time-value of money, when a no-interest loan is made for a definite term, the estate of the person making the loans is reduced in that the economic value of the promise to pay off the loan in the future is less than the value of the money which was loaned out.[4] The Commissioner suggests that the same thing is true of the loans in the case at bar. However, as the appellee points out, since the estate could require the loans to be repaid on demand, there is no reason to expect that the fair value of the promise to repay would be substantially less than the face amount of the loans.[5] This fact led the Tax Court below and the district court in *Johnson v. United States,* 254 F.Supp. 73 (N.D.Tex.1966)—the only reported decision on all fours with the case at bar—to conclude that the government's interest in tax-

ing the estate of the lender had not been affected. But the Commissioner goes on to argue that if the lender had retained the money loaned out and invested it in income-producing assets, his taxable estate would have grown larger by the amount of income earned. *See* Note *Gift Taxation of Interest-Free Loans,* 19 Stan.L.Rev. 870, 874 (1967). Appellee's counter-argument, which was accepted by the majority in the Tax Court, is that

> our income tax system does not recognize unrealized earnings or accumulations of wealth and no taxpayer is under any obligation to continuously invest his money for a profit. The opportunity cost of either letting one's money remain idle or suffering a loss from an unwise investment is not taxable merely because a profit *could have been made* from a wise investment.

67 T.C. 1060, 1067 (1977) (emphasis in the original).

It is true that under our system a taxpayer is not under any duty to cultivate the fruits of his capital (or labor) and will not be taxed as if he had when he hasn't. However, by actively placing others in a position to enjoy the fruits of his capital, the taxpayer in a sense vicariously "realizes" the economic potential thereof.[6] Permitting others to enjoy the economic bene-

---

*History of Federal Gift Taxation,* 18 Taxes 531, 533 (1940).

**3.** We do not mean to express any view with regard to the Commissioner's contention, not part of this appeal, that the loans in this case gave rise to constructive income to the Areljay partners taxable under the income tax.

**4.** As the date of maturity of the loan approaches, the fair market value of the promise to pay increases. All other things being equal, at the date of maturity the market value and the face value of the note would be equal.

**5.** There might be some difference because of the lack of credit worthiness of the promissor, or because there is an anticipation of practical delays in procuring payment. There is no evidence of either in this case.

**6.** A similar argument might be made with respect to donations of personal services. Yet,

the IRS has apparently made an administrative determination that a donor's free offering of his personal services is not subject to the gift tax. Lowndes, Kramer & McCord, Federal Estate And Gift Taxes, § 26.1 (3d ed. 1974), and what little judicial authority there is on the question is to the same effect, *see, e. g.,* Comm'r of Internal Revenue v. Hogle, 165 F.2d 352 (10th Cir. 1947). However, although the situation with regard to labor may be analogous in an economic sense, a different set of policy considerations are involved. It has been suggested that:

> The opportunities for deflection of the relative income tax burdens clearly appear to distinguish interest-free loans from gifts of services and justify the backstop use of the gift tax to minimize the potential loss to the federal fisc. (Footnotes omitted.)

Lowndes, Kramer & McCord, *supra* § 26.15 at 686.

fits of an asset can be seen as one means of exerting control over the asset's economic potential. This might serve as a theoretical basis for distinguishing gifts such as those involved here from situations where the taxpayer lets his productive properties lie totally fallow. However, whatever the value of this consideration as a policy factor favoring the gift taxation of loans such as those present in the instant case, the Commissioner has not been able to point to any authority suggesting that the congressional purpose of protecting the estate tax was concerned with the use of gifts to diminish a taxpayer's potential estate as well as his actual one.

The Commissioner also points out that a failure to tax the use of interest-free demand loans would be inconsistent with the tax treatment of other practical alternatives for the transfer of an economic benefit to another. The appellee has conceded that had the interest-free loans been made for a definite term, a taxable gift might have occurred.[7] Similarly, if the taxpayer had contributed the money to a trust made irrevocable for a certain duration, then the present discounted value of the income interest payable to the beneficiaries would have been considered a gift taxable to the taxpayer at the time that the trust was established. *See* Treasury Regulations on Gift Tax (1954 Code), § 25.2511–1(e) (26 C.F.R.). More analogous to the situation of no-interest loans repayable on demand is the establishment of a revocable trust. There the income payments to the beneficiary are considered gifts from the grantor during the calendar years received. If the power to revoke terminates, a gift of the

corpus is considered to occur.[8] *See* H.Rep.No. 708, 72d Cong., 1st Sess., 28 (1932); Treasury Regulations on Gift Tax (1954 Code), §§ 25.2511–1(e), 2(f), 25.2512–5(c).

It is not enough for the Commissioner to demonstrate that there are good policy reasons for taxing interest-free demand loans and that to fail to do so will lead to inconsistent tax treatment of transactions constituting practical alternatives. He must also show that the taxation of such loans is within the contemplation of the gift tax statute. The Commissioner attempts to carry his burden in this respect by relying on Sections 2501 and 2512(b) of the Code, 26 U.S.C. §§ 2501 and 2512(b). No statutory language or statements in the legislative history have been cited dealing specifically with interest-free loans.[9] Instead, reliance is placed on the broad general sweep of these statutory sections. Section 2501 imposes a gift tax on any "transfer of property by gift" made by a taxpayer during the taxable year. Section 2512(b) provides:

§ 2512. Valuation of gifts.

(b) Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

Congress intended the gift tax statute to "cover and comprehend all transactions . . . whereby and to the extent . . . that property or a property right is donatively passed to or conferred upon another,

---

**7.** Although the Commissioner characterized the petitioner's concession at oral argument as being a concession as to taxability, in fact the appellee only conceded that the present discounted value of a no-interest term loan would be less than its face amount. However, it may be possible to characterize the differential as a gift under Section 2512(b) of the Internal Revenue Code. *See Blackburn v. Comm'r,* 20 T.C. 204 (1953); *Mason v. United States,* 513 F.2d 25 (7th Cir. 1975). The question has not yet been decided.

**8.** The important distinction between a revocable trust and an interest-free demand loan is that in the former case, the beneficiary is given the income already produced by the capital, while in the latter the borrower receives only the opportunity to use the capital productively.

**9.** Although the petitioner attempts to distinguish between the open account loans in the case and those evidenced by demand notes, we find them to be equivalent for present purposes. Both forms involved loans of money repayable on demand and with no provision for the payment of interest.

regardless of the means or device employed in its accomplishment." H.Rep.No. 708, 72d Cong., 1st Sess. 22 (1932); S.Rep.No. 665, 72d Cong., 1st Sess. 39 (1932); both reprinted in 1939–1 Cum.Bull. (Part 2) 476, 524. The purpose was to "reach every kind and type of transfer by gift." *Robinette v. Helvering,* 318 U.S. 184, 187, 63 S.Ct. 540, 542, 87 L.Ed. 700 (1943).[10] In enacting the predecessor to Section 2512, Congress dispensed with the common law test of "donative intent" in favor of a "workable external test." "The language of the gift tax statute, 'property . . . real or personal, tangible or intangible,' is broad enough to include property, however conceptual or contingent." *Smith v. Shaughnessy,* 318 U.S. 176, 180, 63 S.Ct. 545, 547, 87 L.Ed. 690 (1942). The Congressional reports also evidence a broad concept of "property":

> The terms "property," "transfer," "gift," and "indirectly" are used in the broadest and most comprehensive sense; the term "property" reaching every species of right or interest protected by law and having an exchangeable value.

H.Rep.No. 708, *supra,* at 27–28; S.Rep.No. 665, *supra,* at 39.

Yet, in spite of the broad sweep of the gift tax statutes the Commissioner's attempt to bring interest-free demand loans within their scope presents a number of difficulties. His argument seems to alternate between at least two analytically distinguishable approaches. He first attempts to characterize the transaction as an "unequal exchange" within Section 2512(b), focusing on the time of the loan. The lender is seen as transferring "property" (money)[11] in exchange for a promise that a like amount of money will be repaid upon demand. This promise is seen as being less in "money's worth" than the money loaned. The Commissioner presents no evidence in support of the latter proposition, but only the argument that the promise is to repay the loan at some indefinite time in the future and that given the time-value of money this must be worth less than its face value. Although this may be true in the abstract in that instantaneous repayment is impossible, from a realistic point of view the value at the time the loan is extended of the right to repayment is both unknown and unknowable. The Commissioner has not produced any evidence showing that demand notes systematically trade at a significant discount from face value in the market place. Nor can a present discounted value formula be successfully applied given the absence of knowledge as to when the loan will be repaid.[12] The most that can be said is that the eventual value of the notes expressed in terms of a present discounted value as of the time of the loan will range somewhere between zero and the face amount of the notes.[13] The reason that the value at the time of the loan cannot be determined with greater certainty is that the transfer of the economic benefit is incomplete at that point, being yet totally dependent on the lender's continuing willingness to refrain from demanding repayment.

The Commissioner's method for determining the timing and amount of the taxable gift generated by interest-free demand loans permits the calculation of a definite value, but is not entirely consistent with the "unequal exchange" theory. The Commissioner would find a gift to have occurred during any quarter in which there were no-interest loans outstanding and would

10. Justice Frankfurter found that Congress desired "to hit all the protean arrangements which the wit of man can devise that are not business transactions within the meaning of ordinary speech . . . ." *Comm'r v. Wemyss,* 324 U.S. 303, 306, 65 S.Ct. 652, 654, 89 L.Ed. 958 (1944).

11. The Congressional reports specifically state that "[t]he word 'property' in the gift tax law includes money." H.Rep.No. 708, *supra,* at 30; S.Rep.No. 665, *supra,* at 42.

12. The Commissioner has not suggested that there was a collateral agreement or plan that would have precluded demanding repayment of the notes over any predetermined period.

13. If payment is demanded immediately after the loan is made, the present value will approximate the face value. If the loan remains perpetually unpaid, the present value approaches zero.

measure the amount of the gift by multiplying the outstanding balances by the market interest rate on similar notes. The imputation of interest in subsequent time periods is not a theoretically accurate measure of the difference in value at the time of the loan between the money loaned and the promise to repay. The "unequal exchange" approach of Section 2512(b) implicitly assumes that the values being compared will be measured at the same point in time, just as Section 2512(a) requires that an outright gift of property be valued as of the date of the gift. The failure to discount the interest imputed in subsequent periods back to the time of the loan leads to the seeming paradox that if the lender were to permit the interest-free loan to remain outstanding for a sufficiently long period before demanding repayment, he would end up paying more in gift taxes than he would have had he made an outright gift of the loan principal.[14] The other problem is that as a measure of the "unequal exchange" differential, the Commissioner's formula would imply that at the time of the loan it was predetermined that the loan would be outstanding during the period in which interest is sought to be imputed. There is no basis for this assumption.

At other times, instead of characterizing the loans as an "unequal exchange," the Commissioner seems to suggest that there is an outright gift of a "property right"—namely, the right to use the money for an indefinite period. To use a real property analogy, it is as if the lender gives the borrower a "tenancy at will" with respect to a sum of money while retaining the "reversion." *See* Simes & Smith, The Law Of Future Interests § 83 (2d ed. 1966). The question is whether such an "at will" interest can properly be characterized as "property" under the gift tax laws; i. e., whether it is "protected by law" and has an "exchangeable value." H.Rep.No. 708, *supra*, at 27; S.Rep.No. 665, *supra*, at 39. Certain "at will" interests have been the subject of legal protection vis-a-vis third parties. A real property tenancy at will clearly gives the tenant a possessory interest against third parties. There is also authority to the effect that an action may be maintained against third parties for interference with a contract right even if the latter was terminable at will. *See* W. Prosser, Law of Torts § 129 at 932 (4th ed. 1971). However, we have seen no authority suggesting that the recipient of a loan payable on demand has a legally protectible interest vis-a-vis the lender. Moreover, the Commissioner has produced no evidence showing that the borrower's "at will" interest has an exchangeable value.[15] Even if the theoretical existence of the possibility of an exchangeable value were conceded, as discussed above the imputation of interest in subsequent time periods is seriously deficient as a measure of that value as of the time of the loan.[16]

■ A third variant of the Commissioner's argument abandons the idea that the gift occurs at the time of the making of the

---

**14.** For example, if a lender makes a $1,000 no-interest loan and the "proper" interest rate is 10%, under the IRS formula he would be treated as having made a gift of $100 in each year the loan remains outstanding. Thus, if the loan remains outstanding for 20 years, he will be treated as having made gifts totaling $2,000, whereas he would only have been taxed on $1,000 if he had made a gift of the principal in the first place. However, the paradox is one of nominal rather than real values. In the case of the outright gift the tax is paid immediately, while under the loan the tax is paid at various points in the future. Because of the time-value of money, the present value of the two alternatives may be about the same.

**15.** Money itself, of course, has an exchangeable value. However, the interest posited here is not money itself, but the right to use a sum of money until the lender demands repayment. It is also noteworthy that at common law a tenancy at will terminates if transferred, and therefore has no exchangeable value. *See* Restatement (Second) Landlord and Tenant § 1.6.

**16.** Appellee cites a number of cases in which courts rejected the IRS's attempt to tax as a gift a series of payments received by virtue of an earlier transferred right, in favor of the taxation of the value of the right itself at the time it was irrevocably transferred. *See, e. g., Galt v. Comm'r, of Internal Revenue,* 216 F.2d 41 (7th Cir. 1954), *cert. denied,* 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743 (1955). However, the present case is distinguishable since the right transferred was revocable. *See* Lowndes, Kramer & McCord, *supra,* § 26.10.

loan in favor of the view that although it begins at that time, it is completed only as, and to the extent that the lender continues to refrain from demanding repayment. This view of the gift as occurring continuously during the period that the loan is outstanding is in harmony with the Commissioner's formula for measuring the amount and timing of the gift. Yet, bringing this version of the Commissioner's argument under the aegis of the gift tax statute involves a certain amount of stretching of the latter. To characterize the mere use of property as a transfer of a property right implies a broader concept of what constitutes a property right under the gift tax laws than has heretofore been recognized.[17] The application of the Commissioner's theory to the case at bar is the equivalent to viewing the appellee as constructively receiving a hypothetical interest payment on the money loaned which he then constructively transfers to the borrower. This raises the problem, discussed previously, of whether a tax is being imposed on what the lender could have done rather than what he did. A finding of a taxable gift is also equivalent to saying that the lender had a right to receive interest from the borrower—which "indebtedness" he then forgave. It is true that a lender has a "right" to charge interest in that he is legally empowered to do so. But absent a contract provision providing otherwise there is no legal obligation for the borrower to pay interest, which might occasion the application of a cancellation of indebtedness approach. *See* Lowndes, Kramer & McCord, *supra,* § 26.12.

■ The Commissioner cites little precedent in support of his interpretation. *Blackburn v. Commissioner,* 20 T.C. 204 (1953), *Mason v. United States,* 513 F.2d 25 (7th Cir. 1975), and *Commissioner v. Edwards,* 135 F.2d 574 (7th Cir. 1943), constitute only indirect support for the subsumption of interest-free term loans within the "unequal exchange" approach of Section 2512(b). The only case directly on point here, *Johnson v. United States,* 254 F.Supp.

73 (N.D.Tex.1966), is squarely contrary to the Commissioner's position. The Tax Court also noted that the courts have consistently rejected the IRS's attempts to impute taxable income to the recipients of interest-free loans. *See J. Simpson Dean,* 35 T.C. 1083 (1961); *Saunders v. United States,* 294 F.Supp. 1276, *rev'd on other grounds,* 450 F.2d 1047 (9th Cir. 1971); *Joseph Lupowitz Sons, Inc. v. Commissioner,* 497 F.2d 862 (3d Cir. 1974). In fact, courts have generally been inhospitable to the Commissioner's attempts to make the granting of interest-free or low-interest loans a taxable event, absent an express statute or regulation. The courts refused to give in to the Commissioner's efforts to impute interest on interest-free or low-interest loans between related business entities until the IRS promulgated Regulation 1.482–2 under newly granted authority. *Compare Tennessee-Arkansas Gravel Co. v. Commissioner of Internal Revenue,* 112 F.2d 508 (6th Cir. 1940), *with B. Forman Co. v. Commissioner of Internal Revenue,* 453 F.2d 1144 (2d Cir.), *cert. denied,* 407 U.S. 934, 92 S.Ct. 2458, 32 L.Ed.2d 817 (1972). That regulation embodied the same basic principle that the Commissioner espoused in the courts, but provided for a "safe harbor" with respect to the taxpayer's choice of interest rate. The courts also refused to impute interest income in connection with interest-free installment sales until Congress added Section 483 to the Code. *See, e. g., Clay B. Brown,* 37 T.C. 461 (1961), *aff'd,* 325 F.2d 313 (9th Cir. 1963), *aff'd,* 380 U.S. 563, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965); *Pretzer v. United States,* 61–1 USTC ¶ 9477 (Ariz.1961). When Congress dealt with the problem, it also gave recognition to the basic principle espoused by the Commissioner, but limited its applicability by excluding sales of certain types of assets and transactions of less than one year or involving less than $3,000.

Adoption of the Commissioner's position in the present case by judicial construction would involve the courts in the difficult

---

**17.** It is of interest that the IRS has consistently maintained that a donation of the use of property that is not a "legally enforceable conveyance" does not constitute a gift of "property" within the meaning of the charitable contribution provisions of the Internal Revenue Code. *See* I.T. 3918, 1948–2 Cum.Bull. 33; Rev.Rul. 70–477, 1970–2 Cum.Bull. 62.

task of determining an appropriate interest rate for imputation. The lack of statutory or regulatory guidelines on this question would also make it difficult for a taxpayer to know in advance whether a particular loan would give rise to a taxable gift, and if so, in what amount. This uncertainty as to valuation would make it difficult to comply with the reporting provisions of Section 6019(a) of the Code. A "safe harbor" in the form of a minimum acceptable interest rate might be desirable, such as that provided in Regulation 1.482–2.

Another problem with adopting the judicial construction urged by the Commissioner is the extremely broad potential reach of the principles that would be at least implicitly recognized. The same reasoning that leads to the finding of a taxable gift when $18 million is loaned by a parent to his children for investment purposes would find a gift where a father lends a thousand dollars to his son graduating from college until he can get established, or even where an office worker lends a fellow employee $10 "until next payday." Similar reasoning might find the presence of a gift when a neighbor borrows your lawnmower and fails to return it immediately, or when out-of-town guests are provided a night's lodging by friends instead of going to a hotel.[18] As in Section 483, it might be desirable to set out a clear set of rules exempting from taxation certain types of property and/or transactions below some threshold duration or dollar value.

Lastly, our hesitancy to adopt the result advocated by the Commissioner by judicial construction is reinforced by equitable considerations. *See Central Illinois Public Service Co. v. United States*, 435 U.S. 21, 98 S.Ct. 917, 55 L.Ed.2d 82 (1978) (Brennan, J., concurring). Although we recognize that the Commissioner has broad discretion in applying a ruling retroactively,

*Wisconsin Nipple and Fabricating Corp. v. Commissioner*, 581 F.2d 1235 (7th Cir. 1978), as the majority opinion in the Tax Court recognized, the Commissioner has only recently begun to assert that the making of non-interest bearing loans is a taxable event, even though the statutory authorities offered in support of that position have been in existence since the creation of the gift tax laws. When the Commissioner's position on the same issue involved in the case at bar was squarely rejected by the court in *Johnson v. United States*, 254 F.Supp. 73 (N.D.Tex.1966), no appeal was taken. Moreover, the Commissioner's non-acquiescence in that decision was not made public until seven years later, six years after the alleged gifts now before us were made. *See* Rev.Rul. 73–61, 1973–1 Cum. Bull. 408.[19] Until that time there was no administrative or judicial authority suggesting that interest-free demand loans would give rise to a taxable gift.

In conclusion, although we are sympathetic to the Commissioner's desire to fill in what may be a significant loophole in the gift tax laws, a number of theoretical and practical problems make it undesirable to do so by judicial construction. *Accord,* Note, 9 Rut.-Cam.L.J. 579, 586 (1978). We express no view here as to whether a prospective regulation making such loans taxable would be valid or whether, on the other hand, the problem would best be left to Congress.

The judgment of the Tax Court is

AFFIRMED.

ROBERT VAN PELT, Senior District Judge, dissenting:

It is with reluctance that I note my dissent. The judges who constitute the majority are men of honor and competence and I respect their judgment. The fact that the Tax Court was divided on this issue, with

---

18. Of course, these kinds of problems would only arise if the taxpayer has already hit the ceiling on gift tax exclusions and deductions because of other transactions. It is also unlikely that the IRS would seek to impose a tax in many of the situations hypothesized. Yet, it may be desirable to rely on something more than the Commissioner's discretion in this area.

19. The notice of deficiency for the 1967 tax year originally sent to the taxpayer in 1971 did not suggest that a taxable gift had occurred. This theory was only added after the 1973 Revenue Ruling by way of an amended notice. Moreover, before the Tax Court the IRS never argued that these loans were within the coverage of Section 2512(b).

four judges dissenting,[1] I mention only to show that I am not alone in the views herein expressed.

While the amount involved in the notice of deficiency is only slightly more than a million dollars, the overall interest-free loans, as the majority opinion recognizes, totalled approximately $18,000,000. I conclude gifts of such magnitude, and of lesser amounts also, if not de minimis, embody a gift. That a gift is being given seems evident to me when you consider the example used by Judge Simpson who dissented in the Tax Court. He says, if the taxpayer here had

> arranged for the borrowers to obtain the money from financial institutions and agreed to pay the interest thereon, clearly, the payment of such interest would constitute a taxable gift.

*Crown v. Commissioner of Internal Revenue,* 67 T.C. 1060, 1066 (1977). The taxpayer here has in effect paid the interest on these loans when he does not demand payment or interest at the prevailing rate. The majority recognized the recipient has been enriched. Under the majority decision, the disparate treatment of gift-giving taxpayers becomes more obvious when we follow through with what has happened. We have here a lender loaning money to his children and other close family members without interest in an amount which, if placed in U.S. Government Bonds, even by one "not bright" in the handling of money, could hardly help resulting in annual income of a million dollars. All of this is received without any gift tax or other transfer tax being paid, if the Tax Court is affirmed.

On the other hand, a grandparent who, without tax advice of lawyers and accountants, gives a grandchild $10,000 in one year, and has previously used his or her gift tax exclusion, pays tax on what by comparison with eighteen million dollars could be called "the widow's mite." I use the populist expressions and comparisons in this paragraph only to point up more graphically my feelings that the decision of the Tax Court's majority "just ain't right."

This dissent is not based solely on what I think is right or wrong. The moral sense and conscience of the majority of this panel is as trustworthy as mine. I dissent, mainly, because I feel Internal Revenue Code §§ 2501, 2511 and 2512 are broad enough to cover this transaction. Where the Congressional history, as related in the majority opinion, indicates that Congress intended the gift tax statutes to "cover and comprehend all transactions . . . whereby and to the extent . . . that property or a property right is donatively passed to or conferred upon another, regardless of the means or device employed in its accomplishment," there is little need to specifically enumerate interest-free loans as a taxable gift or as included in the term "all transactions." I can only conclude, as the Commissioner of Internal Revenue and four members of the Tax Court have concluded, that the authority for treating this as a taxable event has long been available in the statutes as written.

I would reinstate the decision of the Commissioner of Internal Revenue and reverse the Tax Court.

---

1. Additionally, three judges did not participate in the consideration or disposition of the case.