[Civ. No. 48378. First Dist., Div. Three. Sept. 16, 1980.]

WELLS FARGO BANK, as Co-executor, etc., et al., Plaintiffs and Respondents, v.
KENNETH CORY, as State Controller, et al., Defendants and Appellants.

COUNSEL

Myron Siedorf, Robert G. Harvey and Gordon K. Ohanesian for Defendants and Appellants.

Titchell, Maltzman, Mark, Bass & Ohleyer, Philip B. Bass and Stephen G. Gould for Plaintiffs and Respondents.

OPINION

FEINBERG, J.—On May 5, 1969, in consideration for a $725,876.49 promissory note, payable on demand at no rate of interest, Ruth H. Lilienthal made loans and advances of $725,656.49 to her son, Phillip N. Lilienthal III. Some partial payments were made, but in 1973, Mrs. Lilienthal forgave $300,000 of the outstanding balance and filed a gift tax return. When the mother died in 1975, the balance due on the loan was $385,756.49.

On May 19, 1977, appellant Kenneth Cory, Controller of the State of California, determined that a gift tax was due for each of the various periods during which the debt to Mrs. Lilienthal was outstanding based upon the proposition that the failure to charge interest constituted a gift. The executor of the mother's estate, Wells Fargo Bank, paid the tax. Respondents Wells Fargo Bank and Philip N. Lilienthal III filed a complaint for refund of the tax. ■ The trial court concluded that the making of a demand note at no rate of interest did not constitute a taxable event. The court ruled that "a mere failure to charge interest on such a loan is not a 'transfer' or 'gift' within the meaning of California Revenue and Taxation Code section 15104." The Controller appeals.

The issue presented, which is of first impression, is whether making an interest-free, intrafamily loan, payable on demand, constitutes a taxable event under California gift tax law. We look to California statutory authority, federal decisional law, and various policy considerations for guidance.

Initially, we must determine whether the transaction at issue is within the ambit of the relevant sections of the California Revenue and Taxation Code. The language of the statutes is the primary source from which to derive legislative intent (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658 [147 Cal.Rptr. 359, 580 P.2d 1155].)

Revenue and Taxation Code section 15201 provides: "A tax is hereby imposed upon every transfer by gift of any property by an individual." Section 15103 states that "'Property' means any real or personal property or interest therein of a resident...and includes:...(b) All intangible and other personal property the transfer of which this State may constitutionally tax." Section 15104, upon which appellant places particular reliance, defines a "transfer" or "gift" as "includ[ing] the passage by gift of *any property, or any interest therein or income therefrom*, in possession or enjoyment, present or future, in trust or otherwise, directly or indirectly, or any transfer made with donative intent." (Italics added.)

The Controller argues that the making of a noninterest-bearing loan, payable on demand, creates a gift for tax purposes equal to the income earned or "earnable" from the money loaned. He claims that the right to use money interest free is "property" or an "interest therein" or "income therefrom" as those terms are used in section 15104. He contends

this claim is buttressed by economic reality in that the right to demand interest is legally enforceable and this right should be considered property within the meaning of the gift tax statute. (Comment, *Gift Taxation of Interest-Free Loans* (1967) 19 Stan.L.Rev. 870, 871.) Furthermore, the Controller asserts that because the right to charge interest is a property right, the waiver of this right can be subject to California gift tax.

The Controller recognizes that the demand aspect of the loan creates some potential problems concerning timing and valuation with respect to levying the gift tax.

California law requires that a gift be "complete" before it can be subject to tax. (*Stewart v. State of California* (1970) 8 Cal.App.3d 449, 452 [87 Cal.Rptr. 672].) To be complete the transfer must result in a complete divestment of the donor's control over the property transferred. (23 Cal.Jur.3d, Death and Gift Taxes, § 150, pp. 583-584.) The Controller asserts that the transfer constituted a complete gift at the end of each gift-tax reporting period during which no demand for repayment was made. Furthermore, he asserts that valuation should be computed by applying the legal rate (7 percent per annum) to the amount of the loan outstanding at the end of each gift-tax reporting period in which the lender has not demanded repayment.

Although Mrs. Lilienthal's transfer was not a complete gift, she did relinquish the right to receive interest on the sum loaned during any period in which she did not demand repayment. Therefore, we believe that if the Legislature intended the transaction to be covered, neither the timing nor the valuation would present insuperable difficulties—assuming the taxing authorities did not attempt to levy the tax prospectively.[1]

In support of his contention that an interest-free loan gives rise to a taxable event, the Controller argues that he has a long standing policy of treating an interest-free loan in a manner similar to a revocable trust.[2] He suggests that the borrower's right to use interest-free money should be equated to income payments which are made to beneficiaries

---

[1]The Controller also finds support for his position in Revenue and Taxation Code section 17615. However, that statute concerns income taxes and is not controlling.

[2]Respondents reply that the record is devoid of any evidence to support this contention. They point to the fact that the Controller did not seek to levy additional gift tax based upon the lack of interest, when, in the course of auditing the return regarding the $300,000 forgiveness, he learned that the loan was interest free.

of revocable trusts. Relying upon the rule that substance rather than form should determine tax liability (*Estate of Gill* (1971) 19 Cal.App. 3d 496, 502 [96 Cal.Rptr. 786]; *Estate of Craycroft* (1961) 191 Cal. App.2d 436, 443 [12 Cal.Rptr. 552]), he argues that in both situations a substantial economic benefit has been conferred. Respondents reply that the authority governing the tax treatment of income payments received by beneficiaries of revocable trusts "does not . . . purport to create income where none exists."

Respondents rely upon federal cases to support their position that an interest-free demand note does not give rise to a taxable event. While the federal cases are not controlling, they can serve as an interpretive guide. (*Douglas* v. *State of California* (1942) 48 Cal.App.2d 835, 838 [120 P.2d 927]; see *Keck* v. *Cranston* (1965) 236 Cal.App.2d 39, 42 [45 Cal.Rptr. 634].)

The Controller argues that Revenue and Taxation Code section 15104 is not "substantially identical" to Internal Revenue Code section 2511 (26 U.S.C. § 2511),[3] therefore, the federal cases should not be followed.

Although there are differences between the provisions of the statutes in question, they cannot be said to apply to different sets of transactions because the federal gift tax statute was designed "to hit all the protean arrangements which the wit of man can devise that are not business transactions within the meaning of ordinary speech, . . ." (*Commissioner* v. *Wemyss* (1945) 324 U.S. 303, 306 [89 L.Ed. 958, 962, 65 S.Ct. 652, 156 A.L.R. 1022].)

In *Johnson* v. *United States* (N.D.Tex. 1966) 254 F.Supp. 73, the taxpayers had made large interest-free loans, repayable on demand, to their adult children. The court held that the parents had not made gifts within the meaning of Internal Revenue Code section 2501 (26 U.S.C. § 2501 (26 U.S.C. § 2501).[4] (*Id.*, at p. 77.) The court rejected the argument that the transactions would subvert the "purpose of the gift tax

[3]Section 2511(a) provides, in pertinent part: "Subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; . . ."

[4]Section 2501(a)(1) provides, in pertinent part, that "A tax . . . is hereby imposed for each calendar quarter on the transfer of property by gift during such calendar quarter . . . ."

laws...[citation], to prevent a person from evading estate taxes through reduction of his estate by *inter vivos* gifts," noting that the taxpayers were under no duty to make their money productive and that the amount of any unpaid loans was includible in the father's taxable estate at death. (*Id.*, at p. 77.) The court also reasoned that the children were under no duty, either express or implied, to pay their parents interest, and that "The time has not yet come when a parent must suddenly deal at arm's length with his children when they finish their education and start out in life. There is no legal requirement, express or implied, to charge them interest on money advanced to them at that stage,..." (*Ibid.*) Finally, the court indicated that the specific authority to tax should be sought from Congress, noting, inter alia, that any legislative action would be prospective.

In *Crown* v. *C.I.R.* (7th Cir. 1978) 585 F.2d 234, the circuit court rejected the Internal Revenue Service's attempt to impose a gift tax upon certain intrafamily, interest-free loans. The taxpayer and his brothers were equal partners in the Areljay Company. Areljay loaned approximately $18 million to 24 trusts which had been established for the benefit of children and other close relatives of the Areljay partners. This indebtedness was represented by notes payable on demand, and by loans on open account. The commissioner determined that each interest-free loan constituted a gift of the value of the use of the money loaned, and calculated that a taxable gift had been made in excess of $1 million.

The circuit court did not agree with the commissioner's claim that an interest-free loan would subvert the goal of protecting the estate tax. The court was more impressed with the commissioner's argument that the lender's estate would be diminished by the amount of income the lender could have earned had she retained and invested the principal.

"It is true that under our system a taxpayer is not under any duty to cultivate the fruits of his capital (or labor) and will not be taxed as if he had when he hasn't. However, by actively placing others in a position to enjoy the fruits of his capital, the taxpayer in a sense vicariously 'realizes' the economic potential thereof.... This might serve as a theoretical basis for distinguishing gifts such as those involved here from situations where the taxpayer lets his productive properties lie totally fallow." (*Id.*, at pp. 236-237.) Nevertheless, the court found that, despite this "policy factor," there was no authority which indicated that

Congress was concerned with the diminution of a taxpayer's *potential* estate.

The court also rejected the commissioner's claim that the lower court's holding would result in the inconsistent treatment of transactions which constitute practical alternatives for transferring similar economic benefits. One of these "practical alternatives" was the establishment of a revocable trust; however, the court distinguished this arrangement, saying that in the case of a revocable trust, "the beneficiary is given the income already produced by the capital, while in . . . [the case of the interest-free, demand loan] the borrower receives only the opportunity to use the capital productively." (*Id.*, at p. 237, fn. 8.)

Although the court acknowledged the broad sweep of the federal statutes, it was unpersuaded by the commissioner's analysis. The court did not consider the mere use of property to be a transfer of property within the meaning of the federal gift tax laws. It recognized that a lender has a right to charge interest, "[b]ut absent a contract provision providing otherwise there is no legal obligation for the borrower to pay interest, . . . [Citation.]" (*Id.*, at p. 240.) The court also noted that the courts have been reluctant to make the granting of interest-free or low-interest loans a taxable event in the absence of express statutory or regulatory authority.

Finally, the court listed several policy considerations in support of its decision. It noted that the courts would be forced to become involved in the difficult task of establishing the proper imputed interest rate and that the lack of regulatory guidelines would make compliance difficult for taxpayers. The court expressed concern about the breadth of the ruling which the commissioner requested: "The same reasoning that leads to the finding of a taxable gift when $18 million is loaned by a parent to his children for investment purposes would find a gift where a father lends a thousand dollars to his son graduating from college until he can get established, or even where an office worker lends a fellow employee $10 'until next payday.'" (*Id.*, at p. 241.) Although the court noted that the kinds of problems mentioned above were unlikely to arise, it did say that "it may be desirable to rely on something more than the Commissioner's discretion in this area." (*Id.*, at p. 241, fn. 18.) The court also noted concern over the retroactive application of the commissioner's position. The court concluded that "although we are sympathetic to the Commissioner's desire to fill in what may be a significant loophole in the gift tax laws, a number of theoretical and

practical problems make it undesirable to do so by judicial construction. [Citation.]" (*Id.*, at p. 241.)

The Controller argues that both *Johnson* and *Crown* have been severely criticized and that *Gertrude H. Blackburn* (1953) 20 T.C. 204 is controlling. In *Blackburn* the petitioner transferred real property having a fair market value of $245,000 to her children. She accepted, as consideration, a note for $172,527.65 payable over 34-1/2 years. The note bore interest at below-the-fair-market rate. The commissioner successfully argued that the fair market value of the note was approximately $40,000 less than its face value. The difference between this discounted figure and the fair market value of the real property was the amount subject to gift tax.

*Blackburn* is distinguishable from the case before us on a number of points. The issue in *Blackburn* was not whether the right to use money, interest-free, was a taxable event. That case involved a complete transfer of real property. The note ran for a fixed time. The instant case concerns a demand note, and it is arguable whether or not a property interest was transferred.

Finally, we do not think that the policy considerations cited by the Controller are compelling. As the court indicated in *Crown*, interest-free loans may result in income splitting.[5] However, this consideration, taken alone, is not a sufficient justification for the result advocated by the Controller.

The court in *Crown* also dealt with the possibility of avoiding inheritance taxes through the use of interest-free loans. This consideration is premised upon the belief that the taxpayer who does not lend his money to his children will use the money productively. We, like the court in *Crown*, are not convinced that the Legislature had a taxpayer's potential estate in mind. (*Crown* v. *C.I.R., supra*, 585 F.2d at p. 237.)

Another policy consideration cited by the Controller is that the adoption of respondents' position would destroy the long-established rule of *Helvering* v. *Clifford* (1940) 309 U.S. 331 [84 L.Ed. 788, 60 S.Ct. 554]. Under the "Clifford Trust Rule," the grantor can shift the tax burden for any trust income to the beneficiary, if the transfer is to per-

---

[5]Income splitting is a technique whereby taxpayers divide their income among persons in lower income tax brackets thereby effecting a net savings in income tax.

sist for more than 10 years. The Controller contends that if interest-free, demand loans do not generate the tax consequences he advocates, a taxpayer could glean the benefits of the Clifford Trust Rule without suffering the concomitant loss of control over the corpus. However, the beneficiary of a trust cannot reach the corpus so the trustor's funds remain intact; in the loan situation, a borrower can consume the funds and the lender is left with the promise to repay. Further, we agree with *Crown* that the tax authorities must show more than good reasons of policy for tax consequences they seek. The Controller must show that the taxation of the loan in question is within the contemplation of the gift tax statute.

We cannot adopt the Controller's interpretation of the statutes. We agree with respondents who cite a rule of judicial construction which favors the taxpayer. "'[C]ourts, in interpreting statutes levying taxes, may not extend their provisions, by implication, beyond the clear import of the language used, nor enlarge upon their operation so as to embrace matters not specifically included. In case of doubt, construction is to favor the taxpayer rather than the government.'" (*Edison California Stores* v. *McColgan* (1947) 30 Cal.2d 472, 476 [183 P.2d 16], cited in *Cal. Motor etc. Co.* v. *State Bd. of Equal.* (1947) 31 Cal.2d 217, 223-224 [187 P.2d 745].)

The judgment is affirmed.

White, P. J., and Scott, J., concurred.

A petition for a rehearing was denied October 16, 1980, and the petition of appellant Cory for a hearing by the Supreme Court was denied December 10, 1980. Tobriner, J., was of the opinion that the petition should be granted.