LESTER CROWN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9192–74.    Filed March 31, 1977.

*Byron S. Miller,* for the petitioner.
*Seymour I. Sherman,* for the respondent.

### OPINION

DAWSON, *Chief Judge:* Respondent determined a deficiency of $46,084.54 in petitioner's Federal gift tax for the year 1967.

The issue presented for decision is whether interest-free loans to relatives of the lender (or trusts for the benefit of such relatives) give rise to taxable gifts from the lender to the borrowers to the extent of the value of the use of the funds loaned; and, if so, what is the proper measure of the amount of such gifts.

All of the facts were stipulated by the parties. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. The pertinent facts are summarized below.

Petitioner was a legal resident of Wilmette, Ill., when he filed his petition herein. He filed his Federal gift tax return for the calendar year 1967 with the District Director of Internal Revenue at Chicago, Ill. Petitioner and his two brothers, Robert Crown (now deceased) and John J. Crown, were equal partners in Areljay Co., Not Incorporated (Areljay), an Illinois general partnership formed in 1944.

In 1967 the Areljay partners had a total of 15 children, separate trusts for 12 of whom are involved herein. Harry N. Wyatt was the trustee of all the trusts, and he was also the trustee of a trust for a first cousin of the Areljay partners and of separate trusts for 11 children of first cousins of the Areljay partners.

As of January 1, 1967, Areljay had loans receivable outstanding from 13 of the foregoing trusts in the aggregate amount of $2,262,574, most of which were represented by non-interest-bearing demand notes. The other 11 trusts were not indebted to Areljay at that date. On January 3, 1967, Areljay made separate open account loans, aggregating $15,960,000, to all 24 trusts to enable each trust to acquire an interest in a partnership known as Henry Crown & Co. (Not Incorporated). During the balance of 1967 Areljay made other miscellaneous loans to some of these trusts and received some repayments on account, so that as of December 31, 1967, loans represented by demand notes totaled $2,073,649 and loans on open account totaled $15,956,375.

All of the aforementioned loans were recorded in the books of Areljay and the respective borrowing trusts, and were evidenced by either demand notes or open accounts. Although none of the demand notes made any provision for interest before demand, all provided for interest at 6 percent per annum after demand. None of the open account loans had a provision with respect to interest. At no time during 1967 did any of the trusts pay, nor were any requested to pay, any amount of interest in respect of any of the loans. During 1967 the market prime rate of interest ranged between 5½ percent and 6 percent per annum, averaging 5.63 percent.

At all pertinent times, Areljay, its partners, and all of the trusts have operated on the cash basis method of accounting, and have used the calendar year as their respective taxable year.

In his notice of deficiency pertaining to petitioner's gift tax return for 1967, respondent determined that each interest-free loan made by the Areljay partnership to the various trusts constituted a gift of the value of the use of the money loaned. Respondent determined a reasonable rate of interest to be 6 percent per annum, and computed the amount of interest that parties bargaining at arm's length would have charged by applying that rate on a daily basis with respect to the outstanding balances of the amounts due both on the demand notes and the open-account loans. The total amount of interest computed in this manner was $1,086,407.75. One-third of this total amount, or $362,135.92, was deemed by

respondent to have been a gift by petitioner, as a one-third owner of Areljay.

The issue presented here is one of first impression in this Court. Respondent seeks to apply the gift tax to the value of interest-free use of loaned funds. In 1973, the year before the notice of deficiency was sent to petitioner, respondent issued Rev. Rul. 73–61, 1973–1 C.B. 408, setting forth his position that:

> The right to use property, in this case money, is itself an interest in property, the transfer of which is a gift within the purview of section 2501 of the Code unless full and adequate consideration in money or money's worth is received. The tax * * * would be imposed on the value of the right to use the money. * * *

The ruling states that in the case of a term loan, the present value of the interest-free use of the money for the entire term of the loan is to be determined actuarially and deemed to be a completed gift as of the date the loan is made; and, in the case of a demand loan, the value of the use of the money must be calculated on a quarterly basis and deemed a gift during each calendar quarter in which such interest-free loan is actually outstanding.

The revenue ruling then makes reference to, and specifically refuses to follow, the decision in *Johnson v. United States*, 254 F.Supp. 73 (N.D. Tex. 1966), the only case in which this specific issue has previously been litigated. In the *Johnson* case, the District Court squarely held that interest-free loans to family members, repayable upon demand, did *not* constitute gifts of the value of the use of the money. For the reasons stated hereinafter, we think the decision reached in *Johnson v. United States, supra,* was correct, and that respondent's position, as stated in the revenue ruling and at issue in this case, cannot be sustained.

Section 2501, I.R.C. 1954,[1] imposes the gift tax upon "the transfer of property by gift." Section 2511(a) sets forth the generally intended scope of the tax as applying:

whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; * * *

---

[1] All section references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

The scope of the tax is amplified in section 25.2511–1(c),. Gift Tax Regs., as follows:

Thus, all transactions whereby property or property rights or interests are gratuitously passed or conferred upon another, regardless of the means or device employed, constitute gifts subject to tax. * * *

The crux of the matter before us is that respondent only recently has begun to assert that the making of non-interest-bearing loans is a taxable event, even though the statutory authorities offered in support of that position have been in existence since the creation of our income and gift tax laws. Complicating this problem is the failure of any court considering the question to accept respondent's position with regard to either the income tax or gift tax provisions in the Code.

As previously noted, *Johnson v. United States*, 254 F.Supp. 73 (N.D. Tex. 1966), is the only case that has considered the issue presented as it pertains to the gift tax laws. The facts in *Johnson* are very similar to those present in this case. A taxpayer made a series of non-interest-bearing demand loans to each of his two adult children during the years in issue, and the Internal Revenue Service attempted to impose a gift tax on the value of the use of money transferred during each year. After considering the intrafamily relationship between lender and borrowers, the purpose of the gift tax laws expressed in *Harris v. Commissioner*, 340 U.S. 106 (1950), and the unequivocal intention of the parties that interest not be charged, the District Court upheld the taxpayer's claim for refund on the ground that no gifts had been made within the meaning of section 2501 of the Code.

Essential to the District Court's holding in the *Johnson* case was its realization that since the principal of these loans would remain in the lender's estate at death, nothing about the transfers permitted the lender to avoid future estate taxes by reducing his current estate by means of inter vivos gifts of principal. The Commissioner was concerned, instead, that the ultimate estate would be reduced by the amounts of money which the lender *could have* earned with the loaned funds during the period of the loans. However, that approach was properly rejected by the District Court because our income tax system does not recognize unrealized earnings or accumulations of wealth and no taxpayer is under any obligation to

continuously invest his money for a profit. The opportunity cost of either letting one's money remain idle or suffering a loss from an unwise investment is not taxable merely because a profit *could have been made* from a wise investment.

Noting that "The right to interest must arise from an express or implied contractual obligation or from statute," the District Court refused to hold that parents must deal with their children at arm's length and charge interest for a loan. 254 F.Supp. at 77. It concluded that Congress should enact a specific statute covering this area if it desired to tax such alleged transfers. We agree with the opinion.

The courts have uniformly rejected every attempt by the Internal Revenue Service to subject the making of non-interest-bearing loans to income or gift taxes. After the Supreme Court's decision in *Commissioner v. Duberstein*, 363 U.S. 278 (1960), this Court held in *J. Simpson Dean*, 35 T.C. 1083 (1961), that shareholders of a corporation who receive interest-free loans from that corporation do not have an increase in taxable income by virtue of having received the loans. The *Johnson* case discussed above was next decided in 1966 with respect to the gift tax provisions. Two years later it was held in *Saunders v. United States*, 294 F.Supp. 1276, 1282 (D. Hawaii 1968), revd. on another issue 450 F.2d 1047 (9th Cir. 1971), that a taxpayer did not receive compensation when he was issued non-interest-bearing loans. Finally, in *Joseph Lupowitz Sons, Inc. v. Commissioner*, 497 F.2d 862 (3d Cir. 1974), affg. in part a Memorandum Opinion of this Court, the Court of Appeals for the Third Circuit relied on our reasoning in *J. Simpson Dean, supra,* when it held that the interest-free use of funds did not create a taxable constructive dividend for a taxpayer. The unanimity of those authorities is complete.

If the making of non-interest-bearing loans is to become a taxable event, we think Congress, not the judiciary, should clearly say so. Our reluctance to undertake such broad steps is not novel. Prior to the promulgation of section 1.482–2, Income Tax Regs., the courts refused to sanction a creation of income by the Internal Revenue Service which sought to impute interest on interest-free or low-interest loans between related business entities. See *Tennessee-Arkansas Gravel Co. v. Commissioner*, 112 F.2d 508 (6th Cir. 1940); *Smith-Bridgman & Co.*, 16 T.C. 287 (1951). That refusal was predicated in part

upon the absence of any realization of cash income. The courts have receded from their former position since the Commissioner was granted the authority to make appropriate allocations to reflect an arm's-length interest rate. See, e.g., *B. Forman Co. v. Commissioner*, 453 F.2d 1144 (2d Cir. 1972), cert. denied 407 U.S. 934 (1972); but compare *Fitzgerald Motor Co.*, 60 T.C. 957, 962 (1973), affd. on other grounds 508 F.2d 1096 (5th Cir. 1975).

Moreover, there are policy considerations which militate against viewing the value use of money or property as a taxable event for gift tax purposes. If respondent's position herein were sustained, the principle established could be extended to a multitude of situations involving gratuitous use or sharing of real or personal property among relatives. The application of the gift tax to common intrafamily sharing of use of property seems administratively unmanageable, and such situations point up the difficulty with the concept of gift taxation attaching to mere permissive use. Thus, we are inclined to follow in this area Justice Holmes' admonition that "a page of history is worth a volume of logic." *New York Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921).

Accordingly, if the scope of the gift tax is to be expanded to encompass such permissive use, we think it should come through congressional action, and not through unnecessarily broad judicial interpretation.

*Decision will be entered for the petitioner.*
Reviewed by the Court.

DRENNEN, QUEALY, and HALL, *JJ.*, did not participate in the consideration and disposition of this case.

SIMPSON, *J.*, dissenting: Here, we have interest-free loans by the partnership in excess of $15 million and, if the gift is measured as suggested by the Commissioner, there is a gift in excess of $1 million. To conclude that such a transfer is not a taxable gift is inconsistent with the explicit terms of the statute, its intended scope as set forth in the legislative history, longstanding Treasury regulations, and the Supreme Court's expansive interpretation of such provision. To hold that such a transfer is not a taxable gift also ignores economic reality. Nor is the Court correct in its assertion that the

Commissioner's attempt to impose the tax is unprecedented. With due respect to my colleagues, I must vigorously disagree with their conclusions.

Section 2511 broadly provides that the gift tax shall apply to any transfer "whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible." The present gift tax provisions were introduced in the Revenue Act of 1932, and the committee reports relating to those provisions declared:

> The terms "property," "transfer," "gift," and "indirectly" are used in the broadest and most comprehensive sense; the term "property" reaching every species of right or interest protected by law and having an exchangeable value.
>
> The words "transfer * * * by gift" and "whether * * * direct or indirect" are designed to cover and comprehend all transactions (subject to certain express conditions and limitations) whereby, and to the extent * * * that, property or a property right is donatively passed to or conferred upon another, regardless of the means or the device employed in its accomplishment. * * * [H. Rept. No. 708, 72d Cong., 1st Sess. (1932), 1939–1 C.B. (Part 2) 457, 476; S. Rept. No. 665, 72d Cong., 1st Sess. (1932), 1939–1 C.B. (Part 2) 496, 524.]

In addition, section 2512(b) provides in part:

> (b) Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift * * *

Though the statute and committee reports do not refer specifically to an interest-free loan, their language reveals that Congress intended to reach any gratuitous transfer of any interest in property and any gratuitous conferring of a benefit. There can be no doubt that the statutory definition includes the transfer of a privilege such as the one now before us; the privilege of using property or money certainly comes within the broad terms of the statute. Had the petitioner in this case arranged for the borrowers to obtain the money from financial institutions and agreed to pay the interest thereon, clearly, the payment of such interest would constitute a taxable gift. Here, we do not know how the petitioner obtained the funds, but irrespective of how the funds were obtained, the transfer of the privilege of using such funds is

the making of a gift if adequate consideration is not paid for such transfer.

The relevant regulations are equally expansive in their scope and provide in part:

Transfers reached by the gift tax are not confined to those only which, being without a valuable consideration, accord with the common law concept of gifts, but embrace as well sales, exchanges, and other dispositions of property for a consideration to the extent that the value of the property transferred by the donor exceeds the value in money or money's worth of the consideration given therefor. However, a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth. * * * [Sec. 25.2512–8, Gift Tax Regs.]

The Supreme Court in *Commissioner v. Wemyss*, 324 U.S. 303 (1945), held that when an individual made a transfer to his prospective wife to compensate her for trust income she would lose upon their marriage, such transfer was a taxable gift even though it was not motivated by donative intent. In reaching its conclusion, the Supreme Court stated at pages 306–307:

To reinforce the evident desire of Congress to hit all the protean arrangements which the wit of man can devise that are not business transactions within the meaning of ordinary speech, the Treasury Regulations make clear that no genuine business transaction comes within the purport of the gift tax by excluding "a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is *bona fide*, at arm's length, and free from any donative intent)." Thus on finding that a transfer in the circumstances of a particular case is not made in the ordinary course of business, the transfer becomes subject to the gift tax to the extent that it is not made "for an adequate and full consideration in money or money's worth." * * * [Citations omitted; emphasis in original.]

There is no claim in this case that the loans were made in the ordinary course of business, nor is there any basis for such a claim; thus, under sec. 2512(b), under sec. 25.2512–8, Gift Tax Regs., and under *Wemyss*, the only question is whether the value of the property transferred exceeded the value of the consideration furnished, and if so, the excess is the amount of the taxable gift. It is well established that in valuing the property exchanged, we are to use "the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge

of relevant facts." Sec. 25.2512–1, Gift Tax Regs. There is no doubt that when a loan is made interest free or at a rate of interest below the prevailing rate for such a loan, an even exchange has not taken place. For example, if $100 is loaned for 1 year interest free when the prevailing interest rate for such a loan is 6 percent, the present value of the promise to repay such loan in 1 year is worth less than $100; on the marketplace, an informed buyer would only be willing to pay approximately $94 for the right to receive $100 a year later. In such a case, the amount transferred is $100, but the consideration received for it is only $94. There has been a gift of $6.

Such an approach has been recognized and adopted in *Gertrude H. Blackburn*, 20 T.C. 204 (1953). In that case, the petitioner transferred to her children property with a fair market value of $245,000 in exchange for a secured promissory note in the amount of $172,517.65, bearing interest at 2¼ percent per annum. At that time, the usual rate of interest for a similarly secured note was 4 percent. Payments of $600 per month were to be made for 34 years and 6 months. There was no dispute that the transaction was part gift and part sale; but the petitioner contended that the amount of the gift was limited to the difference between the value of the property and the face amount of the note. On the other hand, the Commissioner argued, and the Court agreed, that the note was not worth its face value. It was worth only its discounted value, and since the interest charged was below the usual rate, the difference in such rates reduced the value of the note by approximately $40,000. We held that such amount represented part of the taxable gift made by the petitioner.

The principle of the *Blackburn* case is equally applicable herein, and the facts are virtually identical; the only difference is that in *Blackburn,* some interest was charged, while in this case, no interest was charged. However, such a difference is without any legal significance in determining whether there is a gift; the face amount of the note is to be discounted by the difference between the going rate of interest and that provided for in the note, irrespective of whether the amount set forth in the note is zero or some other amount.

The same approach has been applied in those cases involving members of a family exchanging property for an

annuity. See *Estate of Koert Bartman,* 10 T.C. 1073 (1948); *Estate of Sarah A. Bergan,* 1 T.C. 543 (1943). In such cases, it was held that the present value of the annuity was to be computed and that if the value of the property exceeded the present value of the annuity, there was a taxable gift. The conclusion of the Court in this case has ignored the holdings in *Blackburn, Bartman,* and *Bergan.*

In those cases, the obligation was to be paid over a predetermined period of time, whereas in the present case, we have demand notes. Such a factual difference does raise an additional problem, but it does not alter the result. In the case of a demand note, it is impossible to determine the discounted value of the promise to repay since the time of repayment cannot be forecast. Yet, even though the discounted value of a demand note cannot be ascertained, the privilege of using the borrowed funds interest free is nonetheless valuable. The difference in facts means merely that we must find a different means for measuring the value of such privilege, and we are satisfied that the method used by the Commissioner is reasonable. Instead of valuing the obligation for repayment at the time of its creation, we wait until the money has been used for some period of time and then measure the value of such use.

Finally, we have recognized that the privilege of using property without charge may be treated as a charitable contribution for income tax purposes. *Thriftimart, Inc.,* 59 T.C. 598, 615 (1973), remanded on other issues by order (9th Cir. 1975); *John G. Allen,* 57 T.C. 12, 13 (1971); *Priscilla M. Sullivan,* 16 T.C. 228, 231 (1951); *Hubert Rutland,* T. C. Memo. 1977–8. If a transfer of such privilege may be the subject of a charitable deduction, it surely may also be a taxable gift.

The majority of the Court relies heavily on the decision in *Johnson v. United States,* 254 F.Supp. 73 (N.D. Tex. 1966). Both the majority of this Court and the District Court assumed that when a loan is made interest free, there is no depletion of the estate, and for that reason, there was no reason to impose the gift tax. However, the assumption is not well grounded. If an individual makes a loan for 1 year and receives a note calling merely for the repayment of the principal, and if such individual then dies, the amount includable in his estate is the discounted value of the note,

which is less than the amount transferred by the decedent. Furthermore, the District Court in *Johnson* utterly failed to apply the definition of gift set forth in the statute and the regulations and embraced by the Supreme Court in *Wemyss.*

Nor does our decision in *J. Simpson Dean,* 35 T.C. 1083 (1961), support the majority's conclusion in this case. In that case, we did not hold that the interest-free loans failed to produce income; it was merely held that such loans did not result in taxable income since it was assumed that there would be deductions to offset any income.

The majority's conclusion also rests on the grounds that the Commissioner is now adopting a new interpretation of the gift tax provisions and that his proposed interpretation will have widespread ramifications and create administrative problems. However, such considerations do not justify the majority's conclusion. It is well settled that the Commissioner may, even retroactively, change an earlier incorrect interpretation of the law applied by him. *Dixon v. United States,* 381 U.S. 68 (1965); *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180 (1957). It is not altogether certain that the interpretation urged by the Commissioner in this case is entirely new, but even if it is, he is certainly free to correct his prior mistakes and apply the gift tax to those transactions coming within the statutory definition. Though the majority is shocked by the consequences of applying the law to some family transfers, they overlook the fact that this case involves not the usual family transfer, but over $15 million. Furthermore, many of the family transfers to which the majority refers would not be subject to tax because of the annual exclusion of section 2503(b). The statute clearly shows that Congress desired a broad application of it, and if an application of the statute as written produces questionable results, those situations should be brought to the attention of Congress. Cf. *Commissioner v. Hart,* 106 F.2d 269, 271 (3d Cir. 1939), remanding on another ground 36 B.T.A. 1207 (1937). There is no reason to believe that a transfer of the magnitude involved in this case should avoid the gift tax.

RAUM, TANNENWALD, and WILBUR, *JJ.,* agree with this dissent.