ESTHER C. DICKMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ESTATE OF PAUL B. DICKMAN, DECEASED, G. WENDELL SMITH, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dickman v. Commissioner
Docket Nos. 13156-78, 13173-78.
United States Tax Court
T.C. Memo 1980-575; 1980 Tax Ct. Memo LEXIS 4; 41 T.C.M. (CCH) 620; T.C.M. (RIA) 80575; December 30, 1980
*4 Held: Interest free loans from parents to their son and a family corporation on open account or evidenced by demand notes do not give rise to taxable gifts. Crown v. Commissioner, 67 T.C. 1060 (1977), affd. 585 F.2d 234 (C.A. 7, 1978), followed. Frank P. Riggs and Guy S. Emerich, for the petitioners. Roger D. Osburn, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in petitioners' Federal gift taxes as follows: Deficiency
Estate of
Esther C.
Taxable Period
Paul B. Dickman
Dickman
1971 1st qtr.
$ 712.04
$ 706.97
2d qtr.
1,432.03
1,437.11
3d qtr.
1,258.24
1,256.37
4th qtr.
1,978.23
1,976.37
1972 1st qtr.
1,195.38
1,177.57
2d qtr.
1,810.43
1,792.62
3d qtr.
1,862.91
1,845.09
4th qtr.
2,582.90
2,565.10
1973 1st qtr.
941.13
932.47
2d qtr.
1,661.12
1,652.48
3d qtr.
1,661.12
1,652.47
4th qtr.
2,381.12
2,372.48
1974 1st qtr.
845.08
771.66
2d qtr.
1,636.20
1,491.66
3d qtr.
1,750.33
1,593.27
4th qtr.
2,537.84
2,313.26
1975 1st qtr.
1,065.81
967.40
2d qtr.
1,853.30
1,687.41
3d qtr.
3,108.81
2,828.46
4th qtr.
3,896.30
3,808.34
1976 1st qtr.
1,859.81
1,846.90
2d qtr.
1,945.29
1,881.51
3d qtr.
922.39
1,108.01
4th qtr.
1,315.10
1,444.80
By amended answer respondent alleges that there were greater *6 taxable gifts and greater gift tax deficiencies than originally determined for the first calendar quarter of 1972 of each of the petitioners. Because of the nature of the disputed item which gave rise to this claim for greater deficiencies and the manner in which the gift tax is computed, the gift tax deficiencies for all calendar quarters subsequent to the first calendar quarter of 1972 would also be affected if respondent's allegation is sustained. Due to certain stipulations by the parties, [1] the principal issue for decision is whether taxable gifts resulted from interest-free loans made by Paul B. Dickman and petitioner Esther C. Dickman to their son and to a closely-held corporation.In the event it is concluded that taxable gifts were made, subsidiary issues of valuation and whether the gifts were of present or future interests must be decided. *7 FINDINGS OF FACT Some of the facts were stipulated and they are so found. The stipulations of fact together with the exhibits attached thereto are incorporated herein by this reference. Petitioner Esther C. Dickman (hereinafter Esther), an individual, resided in Ruskin, Florida, when her petition was filed herein. Gift tax returns were filed for each of the calendar quarters here involved; the returns for the first three calendar quarters of each year were filed with the Office of District Director, Jacksonville, Florida, and the returns for the fourth quarter of each year were filed with the Office of the Internal Revenue Service at Chamblee, Georgia. Petitioner G. Wendell Smith, personal representative, is the duly qualified personal representative for the Estate of Paul B. Dickman, deceased. Gift tax returns were filed for each of the calendar quarters here involved; the returns for the first three calendar quarters of each year were filed with the Office of District Director, Jacksonville, Florida, and the returns for the fourth quarter of each year were filed with the Office of the Internal Revenue Service at Chamblee, Georgia. Paul B. Dickman (hereinafter decedent) *8 and Esther were husband and wife at all times relevant to this case and until decedent's death on December 22, 1976. Esther is now, and both decedent and Esther were, residents of Hillsborough County, Florida, at all relevant times. Artesian Farms, Inc. (hereinafter Artesian) is a Florida corporation engaged (at all times relevant hereto) in farming and in operating a motel and restaurant. Artesian had two classes of stock outstanding. The only difference between the classes was voting rights. Ownership of Artesian stock was as follows: Total
Voting Common
Shares
%
Shares
%
Paul B. Dickman *
370
9.02
170
20.74
Esther C. Dickman
100
2.44
98
11.96
Lyle C. Dickman
678
16.54
236
28.78
Margaret R. Dickman
702
17.12
79
9.63
Paul R. Dickman
750
18.30
79
9.63
Edward L. Dickman
750
18.29
79
9.63
Glenn K. Dickman
750
18.29
79
9.63
TOTAL
4,100
100.00
820
100.00
Non-Voting Common
Shares
%
Paul B. Dickman *
200
6.08
Esther C. Dickman
2
.06
Lyle C. Dickman
442
13.48
Margaret R. Dickman
623
19.00
Paul R. Dickman
671
20.46
Edward L. Dickman
671
20.46
Glenn K. Dickman
671
20.46
TOTAL
3,280
100.00
*9 Lyle C. Dickman (hereinafter Lyle) was the only child of decedent and Esther. Lyle died on May 13, 1976. Margaret R. Dickman was Lyle's wife and Paul R., Edward L., and Glenn K. Dickman are sons of Lyle and Margaret. All five of the men were active in the management of Artesian, although decedent was the dominant force in corporate affairs. All of the stockholders of Artesian employed the cash basis, calendar year method of accounting; Artesian employed the accrual basis, June 30 fiscal-year method. Decedent was a pioneer settler of Ruskin, Florida, and despite, very difficult times during the depression of the 1930's, made a fortune in agriculture and real estate. He was joined in business by his son, Lyle, following Lyle's discharge from the Armed Forces at the end of World War II. Lyle contributed greatly to the family businesses. When Lyle died on May 13, 1976, Lyle's gross estate for Federal estate tax purposes was $ 5,009,026.65. When decedent died on December 22, 1976, his gross estate for Federal estate tax purposes was $ 3,464,011.05. *10 During the calendar quarters here involved, decedent made interest-free loans to Lyle and to Artesian. The outstanding loan balances at the end of each calendar quarter for these loans were as follows: Calendar Quarter Ending
Lyle
Artesian Farms, Inc.
March 31, 1971
$ 144,715.87
$ 374,650.00
June 30, 1971
144,715.87
374,650.00
September 30, 1971
144,715.87
300,578.00
December 31, 1971
144,715.87
300,578.00
March 31, 1972
144,715.87
669,733.00
June 30, 1972
144,715.87
669,733.00
September 30, 1972
144,715.87
669,733.00
December 31, 1972
144,715.87
669,733.00
March 31, 1973
225,615.87
457,641.00
June 30, 1973
225,615.87
457,641.00
September 30, 1973
225,615.87
457,651.00
December 31, 1973
225,615.87
457,641.00
March 31, 1974
225,615.87
356,806.00
June 30, 1974
225,615.87
356,806.00
September 30, 1974
225,615.87
420,515.00
December 31, 1974
225,615.87
420,515.00
March 31, 1975
277,915.87
420,515.00
June 30, 1975
277,915.87
420,515.00
September 30, 1975
342,915.87
471,454.00
December 31, 1975
342,915.87
471,454.00
March 31, 1976
342,915.87
471,454.00
June 30, 1976
342,915.87
471,454.00
September 30, 1976
342,915.87
207,875.00
December 31, 1976
342,915.87
207,875.00
*11 Esther also made similar loans to Lyle and to Artesian. During the same period as reflected in the above table for loans by decedent, the outstanding balance at the end of each calendar quarter for loans by Esther to Lyle totaled $ 226,130.05, and for loans to Artesian totaled $ 68,651.02. With two exceptions, all loans made by decedent and Esther to Lyle and Artesian were evidenced by non-interest bearing demand notes. One of the exceptions was a $ 65,000 loan by decedent to Lyle on June 30, 1975. This loan was "open-account" and was payable on demand. The second exception was a $ 456,805.90 loans in 1972 from decedent to Artesian. On March 16, 1969, First Federal Savings and Loan Association of Tampa (hereinafter First Federal) loaned $ 480,000 to Artesian, which loan was secured by a mortgage on a motel owned by Artesian. On January 31, 1972, decedent paid $ 456,805.90 to First Federal in complete satisfaction of this loan. On March 28, 1972, Artesian issued a note and mortgage to decedent for $ 456,805.90. Such note (hereinafter term note) and mortgage provided for no interest and for payment on or before March 28, 1982. No explanation was provided concerning *12 the 2-month delay in issuing the term note and mortgage. The mortgage was not recorded. Partial repayment of the $ 456,805.90 amount was made by Artesian to decedent during the period involved. [2]
Artesian's books contain the following entries with regard to the foregoing transaction: Date
Account
Amount
Jan. 31, 1972
Mortgage Payable--First Federal
$ 456,805.90 (Debit)
Jan. 31, 1972
Paul B. Dickman--Personal
456,805.90
(Credit)
Jan. 29, 1973
Paul B. Dickman--Personnal
456,805.90 (Debit)
Jan. 29, 1973
Mortgage Payable--Paul B.
Dickman, Personal
456,805.90 (Credit)
No explanation was provided concerning why the amount was transferred to a different account in January 1973. The only relevant entry *13 on decendent's personal books was a $ 456,805.90 debit to an "Artesian Farms Mtg." account on December 31, 1972. In the statutory notices of deficiency, respondent determined that the loans made by decedent and Esther to Lyle and Artesian resulted in taxable gifts to the extent of the value of the use of the amounts loaned. In determining the amount of the gifts, respondent applied the following interest rates to the loan balances outstanding at the end of each taxable quarter: Taxable Quarters Ending Within:
Interest Rate
Jan. 1, 1971-June 30, 1975
6 percent
July 1, 1975-Jan. 31, 1976
9 percent
Feb. 1, 1976-Dec. 31, 1976
7 percent
The interest rates used were the same as those established under section 6621, I.R.C. 1954, as made applicable by section 6601 to underpayments in tax. In determining the gift tax deficiencies for the calendar quarters involved, it was necessary to determine the base or total net or taxable gifts for calendar years prior to the period at issue herein. In determining these base amounts, respondent included therein as gifts an amount for interest on non-interest demand loans made by decedent and Esther *14 to Lyle during the calendar years prior to the period at issue. When the statutory notices of deficiency were issued, respondent was unaware of the existence of the March 1972 term note. By amended answer respondent asserts a greater deficiency for calendar quarters ending on March 31, 1972, based on the assertion that decedent received the term note in exchange for his payment of the $ 456,809.90 amount to First Federal and that a gift resulted to the extent the fair market value of the term note was exceeded by the $ 456,809.90 amount. [3] The fair market value of the term note was computed to be $ 255,078.13 [$ 456,809.90 (face amount) X 0.558395 (the remainder interest in 10 years computed at a discount rate of 6 percent under section 25.2512-9(f), Table B, Gift Tax Regs.)] and, thus, the taxable gift to be $ 201,727.77 ($ 456,809.90 - $ 255,078.13). OPINION The principal *15 issue for decision is whether any of the loans made by decedent and Esther to their son and to a closely-held corporation resulted in taxable gifts. [4]
Recently, in Crown v. Commissioner, 67 T.C. 1060 (1977), affd. 585 F.2d 234 (7th Cir. 1978), the Court had before it the question whether intra-family, interest-free demand loans gave rise to taxable gifts to the extent of the value of the use of the loan proceeds.In Crown it was held that such loans did not result in taxable gifts. Respondent does not argue that the instant loans evidenced by demand notes are factually distinguishable from those in Crown or that Crown is otherwise distinguishable, rather he only argues that Crown was incorrectly decided. As he did in Crown and in Rev. Rul. 73-61, 1973-1 C.B. 408, respondent contends herein that the loan-recipient's right to use the loan proceeds was a valuable property interest and that the receipt *16 of such a property interest without full and adequate consideration being given in exchange therefor (in the form of an obligation to make interest payments) resulted in taxable gifts. In addition, respondent argues that the broad scope of the gift tax provisions requires that interest-free demand loans be subject to gift tax. Respondent has not advanced any argument that was not earlier considered and discussed either by this Court in its opinion in Crown or the Seventh Circuit in its opinion affirming this Court in Crown. The only other case directly in point on this issue is Johnson v. United States, 254 F.Supp. 73 (N.D. Tex. 1966), which reached the same conclusion on this issue that we reached in Crown. While, as evidenced by the dissents from both this Court's and the Seventh Circuit's Crown opinions, the answer to the question presented is not above dispute, we see no purpose in reconsidering our decision in Crown at this time. [5] Accordingly, we conclude that the demand and open-account loans made by decedent and Esther did not result in taxable gifts. *17 Notwithstanding Crown, respondent argues that a different result attaches to the $ 456,809.90 loan by decedent to Artesian, which loan is evidenced by the term note. Respondent contends that a non-arm's-length, unequal exchange occurred herein when decedent received the 10-year term note, the fair market value of which respondent calculated to be $ 255,078.13, in exchange for the $ 456,809.90 loan, thus resulting in a taxable gift of $ 201,727.77. Although there is scant evidence as to why a term note was executed in connection with the $ 456,809.90 loan, [6] we find it difficult to conclude that there was in fact an "exchange" of the term note for the loan or that this loan was substantially different than the other loans made by decedent to Artesian. Decedent was the dominant force in corporate affairs and he made a practice of making interest-free loans to the corporation. From all accounts, it appears that decedent viewed his financial affairs and those of Artesian as one, such that these interest-free loans were made when, from the standpoint of the most productive use of the funds, it was in the best interests of himself and the corporation. As the history of partial *18 loan repayments indicates, decedent's loans to Artesian would be repaid when it was financially beneficial to do so. It was at such times that "demand" for repayment would be made.Given these circumstances, it is difficult to ascribe much significance to the term note provision requiring repayment of the principal within 10 years. We believe this loan was in effect no different than those in Crown. If Crown stands for the proposition that bona-fide, interest-free demand loans made in an intra-family setting do not give rise to taxable gifts, under the facts of this case we see no reason to distinguish the $ 456,809.90 loan from the other loans when it is clear that repayment of the $ 456,809.90 loan would occur under the same circumstances as the other loans. While this conclusion may highlight the fiction of the "demand" element of Crown-type loans, it does not undercut the rationale of Crown that Congress must act if these types of loans are to become taxable events. *19 Accordingly, we conclude that the $ 456,809.90 loan was in substance a demand loan, as a result of which there is no gift tax consequence. Crown v. Commissioner, supra; Johnson v. United States, supra.[7]
Decisions will be entered for the petitioners. Footnotes
1. The parties have stipulated that petitioners are entitled to the "split gift" provisions of section 2513, I.R.C. 1954, except that net gifts made either by Paul B. Dickman to petitioner Esther C. Dickman or by petitioner Esther C. Dickman to Paul B. Dickman by virtue of gifts being made to a closely-held corporation do not qualify for this split gift provision. Effect was given to this stipulation in determining the gift tax deficiencies. In determining the deficiencies for some of the periods involved, respondent erred by allowing annual exclusions for gifts of certain future interests and by making certain mathematical mistakes. The parties have stipulated that these errors can be corrected in connection with any computations to be made under Rule 155, Tax Court Rules of Practice and Procedure.↩
*. Includes non-voting stock held indirectly through 100 percent stock-ownership of a corporation which owned stock of Artesian.↩
2. A specific record of repayments by Artesian to decedent was not provided. As shown by the table detailing the outstanding loan balances at the end of each calendar quarter, it is evident that some repayments were made. On brief petitioners state that, as funds became available and repayments made, the bookkeeping accounts pertaining to the demand loans were debited first and the account pertaining to the term note was debited last.↩
3. In the case of Esther, the increased deficiency would result from the application of the split gift provisions. Respondent originally determined the gift tax deficiencies herein by treating the $ 456,809.90 amount as part of the loan balances outstanding at the end of the calendar quarters.↩
4. Respondent makes no argument that any loan was not in fact bona fide. The parties agree that the gift tax consequences of the "open-account" loan is the same as that of the loans evidenced by the demand notes.↩
5. We do not overlook the fact that both Courts in Crown mentioned the fact that respondent had not raised this issue in this context until Johnson v. United States, 254 F.Supp. 73 (N.D. Tex. 1966), which was not appealed, and did not announce an official position on the issue until Rev. Rul. 73-61, 1973-1 C.B. 408, which was after the transfers occurred in Crown, and that in this case some of the transfers occurred prior to and some after Rev. Rul. 73-61. However, neither Court relied on the retroactive-prospective point in reaching their conclusions and we do not delieve it should make any difference in this case. The legal arguments espoused in those opinions, as opposed to the equitable argument, supported the opinions in Crown↩ and also support the conclusion we reach on this issue here.
6. The absence of such evidence is principally due to the death prior to trial of both decedent and Lyle. Considering that the term loan predated both Crown v. Commissioner, 67 T.C. 1060, (1977), affd. 585 F.2d 234 (7th Cir. 1978), and Rev. Rul. 73-61, 1973-1 C.B. 408↩, there was little gift-tax reason for giving much thought to the manner in which the loan was evidenced.
7. Having reached this conclusion, it is unnecessary to address the question whether interest-free term loans have different gift tax consequences than interest-free demand loans. See Estate of Berkman v. Commissioner, T.C. Memo. 1979-46, which however, is distinguishable from this case. See also Blackburn v. Commissioner, 20 T.C. 204↩ (1953).