Esther C. **DICKMAN**, Estate of Paul B. Dickman, Deceased, G. Wendell Smith, Personal Representative, Petitioners-Appellees,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent-Appellant.

No. 81–5297.

United States Court of Appeals, Eleventh Circuit.

Nov. 1, 1982.

Certiorari Granted Feb. 22, 1983. See 103 S.Ct. 1181.

John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Section, John H. Menzel, Director, Tax Litigation Div., Farley Katz, Atty., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellant.

Frank P. Riggs, Sun City Center, Fla., Guy S. Emerich, Punta Gorda, Fla., for petitioners-appellees.

---

Before GODBOLD, Chief Judge, HILL and FAY, Circuit Judges.

JAMES C. HILL, Circuit Judge:

At issue in this case is whether taxable gifts resulted when lenders made interest-free loans to a relative and to a closely held corporation. The Tax Court ruled that all loans here were on a demand basis and, following its decision in *Crown v. Commissioner*, 67 T.C. 1060 (1977), aff'd, 585 F.2d 234 (7th Cir. 1978), it held that the loans involved no gift tax consequences. We reverse, holding that such interest-free loans are subject to the gift tax whether the loans are made for a fixed term or are on a demand basis; we remand for further proceedings relevant to the taxpayers' challenge to the gift tax deficiencies assessed by the Commissioner.

## I. THE FACTS

Paul B. Dickman (now deceased) and Esther C. Dickman were husband and wife, and Lyle C. Dickman (also deceased) was their son. Artesian Farm, Inc. is a Florida corporation which was owned by Paul, Esther, Lyle, and Lyle's wife and sons.[1]

Paul ("decedent") and Esther made substantial loans to Lyle and Artesian during the calendar quarters involved here.[2] With two exceptions, all the loans were evidenced by non-interest bearing demand notes. One exception was a loan made to Lyle on

1. The stock in Artesian Farm was owned as follows:

| | Total | | Voting Common | | Non-Voting Common | |
|---|---|---|---|---|---|---|
| | Shares | Percent | Shares | Percent | Shares | Percent |
| Paul B. Dickman * | 370 | 9.02 | 170 | 20.74 | 200 | 6.08 |
| Esther C. Dickman | 100 | 2.44 | 98 | 11.96 | 2 | .06 |
| Lyle C. Dickman | 678 | 16.54 | 236 | 28.78 | 442 | 13.48 |
| Margaret R. Dickman | 702 | 17.12 | 79 | 9.63 | 623 | 19.00 |
| Paul R. Dickman | 750 | 18.30 | 79 | 9.63 | 671 | 20.46 |
| Edward L. Dickman | 750 | 18.29 | 79 | 9.63 | 671 | 20.46 |
| Glenn K. Dickman | 750 | 18.29 | 79 | 9.63 | 671 | 20.46 |
| TOTAL | 4,100 | 100.00 | 820 | 100.00 | 3,280 | 100.00 |

* Includes non-voting stock held indirectly through 100 percent stock-ownership of a corporation which owned stock of Artesian.

---

2. The outstanding loan balances at the end of each calendar quarter for the loans made by the decedent were as follows:

| Calendar Quarter Ending | Lyle | Artesian |
|---|---|---|
| March 31, 1971 | $144,715.87 | $374,650.00 |
| June 30, 1971 | 144,715.87 | 374,650.00 |
| September 30, 1971 | 144,715.87 | 300,578.00 |
| December 31, 1971 | 144,715.87 | 300,578.00 |
| March 31, 1972 | 144,715.87 | 669,733.00 |
| June 30, 1972 | 144,715.87 | 669,733.00 |
| September 30, 1972 | 144,715.87 | 669,733.00 |
| December 31, 1972 | 144,715.87 | 669,733.00 |
| March 31, 1973 | 225,615.87 | 457,641.00 |
| June 30, 1973 | 225,615.87 | 457,641.00 |
| September 30, 1973 | 225,615.87 | 457,641.00 |
| December 31, 1973 | 225,615.87 | 457,641.00 |
| March 31, 1974 | 225,615.87 | 356,806.00 |
| June 30, 1974 | 225,615.87 | 356,806.00 |
| September 30, 1974 | 225,615.87 | 420,515.00 |
| December 31, 1974 | 225,615.87 | 420,515.00 |
| March 31, 1975 | 277,915.87 | 420,515.00 |
| June 30, 1975 | 277,915.87 | 420,515.00 |
| September 30, 1975 | 342,915.87 | 471,454.00 |
| December 31, 1975 | 342,915.87 | 471,454.00 |
| March 31, 1976 | 342,915.87 | 471,454.00 |
| June 30, 1976 | 342,915.87 | 471,454.00 |
| September 30, 1976 | 342,915.87 | 207,875.00 |
| December 31, 1976 | 342,915.87 | 207,875.00 |

During the same period reflected in the above table, the outstanding balance of loans from Esther at the end of each calendar quarter was $226,130.05 to Lyle and $68,651.02 to Artesian.

"open-account" and payable on demand. The other was one made to Artesian; the parties dispute its characterization as a term or a demand loan.[3] After an audit, the Commissioner determined that the loans made by the decedent and Esther resulted in taxable gifts to the extent of the value of the use of the money lent.[4]

Statutory notices of gift tax deficiency were issued for each of the calendar quarters ending March 31, 1971, through December 31, 1976; the total amounts were $41,109.78 for Esther and $42,212.91 for the decedent. Esther and the decedent's estate ("taxpayers") sought redetermination of the deficiencies by filing petitions with the Tax Court on November 28, 1978. By amended answers, the Commissioner asserted a greater deficiency for one of the quarters.[5]

The Tax Court found that all loans were demand loans indistinguishable from those in *Crown v. Commissioner*, 67 T.C. 1060 (1977), aff'd, 585 F.2d 234 (7th Cir. 1978). Relying on the opinions in *Crown*, the court held that the loans did not involve taxable gifts so that the taxpayers were not liable for the asserted deficiencies.

## II. THE APPLICATION OF THE GIFT TAX PROVISIONS

### A. The Reach of the Gift Tax

Section 2501(a)(1) of the Internal Revenue Code of 1954 imposes a gift tax on any "transfer of property by gift" made by an individual during the taxable year. Section 2511(a) provides that the tax should apply "whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible." Section 2512(b) helps define the phrase "transfer of property by gift:"

Where the property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar quarter.

The present gift tax provisions were enacted by the Revenue Act of 1932. The Congressional Committee reports reflect Congress' intent to reach any gratuitous transfer of any interest in property:

The terms "property," "transfer," "gift," and "indirectly" are used in the broadest and most comprehensive sense; the term "property" reaching every species of right or interest protected by law and having an exchangeable value.

The words "transfer . . . by gift" and "whether . . . direct or indirect" are designed to cover and comprehend all transactions (subject to certain express conditions and limitations) whereby and to the

---

3. The Commissioner has contested the Tax Court's decision that the loan was on a demand basis. We decline to reach that issue, for it is not absolutely clear at this point what difference the characterization will make since we hold that both term and demand loans produce taxable consequences. While the Commissioner did increase the assessed deficiency after determining that the loan was for a fixed term, *see infra* note 5, that does not crystallize the issue because there has been no judicial review of his valuation methods in this case. On remand, the Tax Court will be presented with the valuation issue; because the distinction and differences will be more fully developed after the Tax Court's consideration of that issue, the controversy concerning the characterization of the loan to Artesian will be ripe for appellate review at that time.

4. In determining the amount of the gifts, the Commissioner applied the following interest rates to the loan balance outstanding during each taxable quarter:

| Period | Interest Rate |
| --- | --- |
| Jan. 1, 1971–June 30, 1975 | 6 percent |
| July 1, 1975–Jan. 31, 1976 | 9 percent |
| Feb. 1, 1976–Dec. 31, 1976 | 7 percent |

The interest rates used were the same as those established under § 6621, Internal Revenue Code of 1954, as made applicable by § 6601 to underpayments in tax. The various interest rates were applied according to the amount outstanding on loan during each of the periods established under § 6621.

5. The amended answers were based upon the Commissioner's determination that a loan to Artesian was a term loan rather than a demand loan.

extent ... that property or a property right is donatively passed to or conferred upon another, regardless of the means or the device employed in its accomplishment.

H.R.Rep.No.708, 72d Cong., 1st Sess. 27–28 (1932), *reprinted in* 1939–1 Cum.Bull. (Pt. 2) 457, 476; S.Rep. 665, 72d Cong., 1st Sess. 39 (1932), *reprinted in* 1939–1 Cum.Bull. (Pt. 2) 496, 524.

The Treasury Regulations embody the same expansive notion:

Thus, all transactions whereby property or property rights or interests are gratuitously passed or conferred upon another, regardless of the means or device employed, constitute gifts subject to tax.

Treas.Reg. § 25.2511–1(c), 26 C.F.R. (1981).

On several occasions, the Supreme Court has indicated that the gift tax provisions should be applied broadly to effectuate the clear, sweeping intent of Congress. For example, in *Commissioner v. Wemyss,* 324 U.S. 303, 65 S.Ct. 652, 89 L.Ed. 958 (1945), the Court held that when an individual made a transfer to his prospective wife to compensate her for trust income she would lose upon their marriage, the transfer was a taxable gift even though it was not motivated by donative intent. The Court stated that "Congress intended to use the term 'gifts' in its broadest and most comprehensive sense" and acknowledged "the evident desire of Congress to hit all the protean arrangements which the wit of man can devise that are not business transactions within the meaning of ordinary speech." *Id.* 324 U.S. at 306, 65 S.Ct. at 654. *See also Smith v. Shaughnessy,* 318 U.S. 176, 180, 63 S.Ct. 545, 547, 87 L.Ed. 690 (1943) ("The language of the gift tax statute 'property ... real or personal, tangible or intangible,' is broad enough to include property, however conceptual or contingent."); *Robinette v. Helvering,* 318 U.S. 184, 187, 63 S.Ct. 540, 542, 87 L.Ed. 700 (1943) (The purpose of the gift tax was to "reach every kind or type of transfer by gift.").

B. The No-Interest Loan as Property

Several court decisions have held that the right to use property for a predetermined, definite period of time constitutes "property" for tax purposes. *E.g., Threlfall v. United States,* 302 F.Supp. 1114, 1118–19 (W.D.Wis.1969) (involving term leasehold and charitable contribution deduction under income tax); *Allen v. Commissioner,* 57 T.C. 12 (1971) (same). Other cases have held that the right to use property for an indefinite period is "property." *E.g., Abbott v. United States,* 74–2 U.S.T.C. ¶ 13,040 (S.D. Miss. Nov. 14, 1974) (involving gift tax valuation and the right to use property for the life of another person); *Thriftimart, Inc. v. Commissioner,* 59 T.C. 598, 615–16 (1973), *remanded on other issues* (9th Cir. 1975) (involving charitable deduction and lease terminable by owner upon sale of building); *Passailaigue v. United States,* 224 F.Supp. 682, 686 (M.D.Ga.1963) (involving charitable contribution deduction under income tax and the right to use real estate for such time as the owner permitted) ("Property is composed of constituent elements and of these elements the right to *use* the physical thing to the exclusion of others is the most essential and beneficial."); *Sullivan v. Commissioner,* 16 T.C. 228, 231 (1951) (involving charitable deduction and right to use property for duration of war).

Based on the reasoning of the previous cases, the Commissioner contends that the gift tax statute must be read to encompass the right to use hundreds of thousands of dollars interest-free for extended periods of time—the right transferred without consideration by the taxpayers to Lyle and Artesian. The Commissioner recognizes that the taxpayers reserved the right to demand repayment of the sums lent, and thus retained dominion and control over the money. However, he points out that since Lyle and Artesian received the right to use the money in the taxable periods involved here, they received the beneficial enjoyment of the transferred property, which, under the Regulations, constitutes a taxable gift to the extent of the value of that right. *See* § 25.2511–2(f), Treas.Reg. (1981), providing that in the case of a transfer of property which is an incomplete gift because the donor retains dominion and control, the "re-

ceipt of income of other enjoyment of the transferred property by the transferee" during the period before the gift is complete "constitutes a gift of such income or of such other enjoyment taxable as of the calendar quarter ... of its receipt."

The taxpayers admit the extremely broad import of the language found in the gift tax provisions and the relevant legislative history. They argue, though, that non-gift tax concepts of property are inapplicable and that the gift tax statute "has never been extended to the point of taxing the use of property without more than continued, withdrawable permission." Appellees' Brief at 5. With special reference to the *Crown* decisions, the taxpayers argue that their position is reflected in other courts' application of the gift tax statute to non-interest-bearing loans. We turn then to those cases and other related ones.

## III. OTHER COURTS, OTHER CASES

### A. Bargain Exchanges Involving Term Loans

In *Blackburn v. Commissioner,* 20 T.C. 204 (1953), the taxpayer transferred property worth $245,000 to her children for a 30-year secured promissory note in the amount of $172,517.65, bearing interest at 2.25%. At that time, the usual rate of interest for a similarly secured note was 4%. The taxpayer conceded that the difference between the value of the property transferred and the face amount of the note was a gift. The issue presented was whether a gift resulted from the transfer of property worth $172,517.65 for a note in that exact amount but bearing a below-market interest rate. The Tax Court held that it was, and that the amount of the gift was the difference between $172,517.65 and the note's fair market value, which reflected a discount because of its low interest rate.

The same reasoning was applied in *Estate of Berkman v. Commissioner,* 387 T.C.M. (CCH) 183 (1979). There the decedent made five loans to his daughter, her husband and their controlled corporation during the years from 1968 to 1972. The loans were each evidenced by a promissory note, with the principal payable in a "balloon" at the end of 20 years. None of the notes was secured. On Mr. Berkman's death in 1974, none of the loans had been repaid. The Commissioner argued that the difference between the amount lent and the value of the notes, discounted to reflect their below-market interest rate, gave rise to a taxable gift. The Tax Court agreed that the loans were not arms-length transactions, and therefore any "difference between the amount of each transfer and the fair market value of each promissory note given in exchange constitutes a taxable gift." *Id.* at 186.

These cases would appear to require gift taxation when a non-interest-bearing term note is used to secure a loan. The taxpayers argue, though, that they lend no guidance here simply because they involved bargain exchanges. We find that the taxpayers' efforts to distinguish the principles underlying these cases are unavailing; the cases suggest that the transfers here resulted in taxable gifts to the extent that the value of property transferred exceeded the value of the notes given in return by Artesian and Lyle.

### B. Demand Loans

It is here that the taxpayers can point to direct authority for their position. The Commissioner has been totally unsuccessful in persuading courts that a taxable gift occurs when money is loaned for no interest and is subject to repayment on demand. The courts have explicitly or implicitly justified their results on the differences between demand and term loans.

The first decision on this issue was *Johnson v. United States,* 254 F.Supp. 73 (N.D. Tex.1966). There, the taxpayers had made a series of non-interest-bearing loans to their two adult children during each of the years in issue, and the IRS attempted to impose a gift tax on the value of the use of the money on loan during each year. The court held that there were no taxable gifts, finding that the taxpayers had no right to interest, either express or implied, on the loans made to their children. The court stated:

The time has not yet come when a parent must suddenly deal at arms-length with his children when they finish their education and start out in life. There is no legal requirement, express or implied, to charge them interest on money advanced to them at that stage, whether it be to open a law office and hang out a shingle, to go into the oil business on a substantial scale, or to begin life on their own in some other way.

*Id.* at 77.

We believe that the court's analysis missed the point of the issue before us. There is, of course, no legal requirement that parents charge their children interest on loans; there is likewise no legal requirement that parents charge for any property they might choose to transfer to their children. An owner is free to use or not to use his property, and there are no tax implications from the failure of an owner to make the highest and best use of such property. However, if an owner does transfer property for less than full consideration, that does constitute a taxable gift.

The other reason given in *Johnson* to support its holding was the conclusion that if the loans went untaxed that would not permit the taxpayers to avoid estate tax by reducing their estate. *Id.* The court reasoned that had the taxpayers not made the loans, they were under no duty to invest the money. Thus, the court apparently believed the loans only reduced the taxpayers' potential estates (*i.e.,* including the interest they might have charged) rather than their actual estates. The loans in *Johnson,* just as in this case, could in fact reduce the taxpayers' actual estates, since the value of a lender-decedent's right to repayment of a loan, whether on demand or after a definite period, may well be worth less than face.

A discount for collectibility, as well as for the delay in repayment, would be entirely possible. "If an individual makes a loan for one year and receives a note calling merely for the repayment of the principal, and if such individual then dies, the amount includable in his estate is the discounted value of the note, which is less than the amount transferred by the decedent." *Crown v. Commissioner,* 67 T.C. at 1069–70 (Simpson, J., dissenting). The imposition of the gift tax here would thus bolster the estate tax.[6]

We conclude, therefore, that *Johnson* rests on erroneous premises and reasoning. *See generally, e.g.,* O'Hare, *The Taxation of Interest-Free Loans,* 27 Vand.L.Rev. 1085 (1974); *Westover, Gift Taxation of Interest-Free Loans,* 19 Stan.L.Rev. 870 (1967); 65 Mich.L.Rev. 1014, 1018 (1967).

In *Crown,* a majority of the Tax Court, with four judges dissenting, indicated its agreement with *Johnson.* The taxpayers in *Crown,* like the taxpayers here, gave close family members the right to use large sums of money indefinitely, until such time as they might demand repayment. The Commissioner asserted that the taxpayers made gifts equal to the fair market value of that property, the value being measured by the interest that would have been charged in arm's length transactions for similar loans. The Tax Court viewed the "crux of the matter" as being the fact that the Commissioner "only recently has begun to assert that the making of non-interest-bearing loans is a taxable event, even though the statutory authorities offered in support of that position have been in existence since their creation of our income and gift tax laws." 67 T.C. at 1063. As the dissenting judges noted, however, such considerations do not justify the result reached in *Crown:*[7]

---

**6.** As the Seventh Circuit has recognized, the Commissioner's position also effectuates another purpose of the gift tax—protection of the income tax. *See Crown,* 585 F.2d at 236.

**7.** The Commissioner also contests the legitimacy of the *Crown* majority's concerns:

    The courts in Crown failed to recognize that there are cases going back to 1953 where the Commissioner contended, and

courts held, that interest-free or low interest loans result in gifts. See *Blackburn* and *Mason* [*v. U. S.,* 513 F.2d 25, 7th Cir.] both *supra.* Although these cases happened to involve term loans, they clearly imply the same result for interest-free demand loans. In addition, Treasury Regulations Gift Tax (1954 Code), Section 25.2511–2(f) (26 C.F.R.), the relevant language of which dates to 1936 (Treas.Reg. 79 (Rev.Act of 1932), Art. 3

It is well settled that the Commissioner may, even retroactively, change an earlier incorrect interpretation of the law applied by him. *Dixon v. United States,* 381 U.S. 68[, 85 S.Ct. 1301, 14 L.Ed.2d 223] (1965); *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180[, 77 S.Ct. 707, 1 L.Ed.2d 746] (1957). It is not altogether certain that the interpretation urged by the Commissioner in this case is entirely new, but even if it is, he is certainly free to correct his prior mistakes and apply the gift tax to those transactions coming within the statutory definition. Though the majority is shocked by the consequences of applying the law to some family transfers, they overlook the fact that this case involves not the usual family transfer, but over $15,000,000. Furthermore, many of the family transfers to which the majority refers would not be subject to tax because of the annual exclusion of § 2503(b). The statute clearly shows that Congress desired a broad application of it, and if an application of the statute as written produces questionable results, those situations should be brought to the attention of Congress.

*Id.* at 1070 (Simpson, J., dissenting).

The Seventh Circuit's decision in *Crown,* 585 F.2d 234, also totally rejected the Commissioner's theories. The court did note that a demand loan could be considered as "an outright gift of a 'property right'—namely the right to use the money for an indefinite period," *id.* at 239, which it analogized to a "tenancy at will" with respect to real property. However, the court felt that the right to use money embodied in a demand loan did not fit within the language of the Congressional Committee reports quoted *supra:*

[W]e have seen no authority suggesting that the recipient of a loan payable on demand has a legally protectible interest vis-a-vis the lender. Moreover, the Commissioner has produced no evidence showing that the borrower's "at will" interest has an exchangeable value. Even if the theoretical existence of the possibility of an exchangeable value were conceded, . . . the imputation of interest in subsequent time periods is seriously deficient as a measure of that value as of the time of the loan.

585 F.2d at 239.

We believe that this reasoning is contrary to other tax cases involving the right to use property for an indefinite period. Those cases establish that an "at will" interest is property, notwithstanding the absence of any rights vis-a-vis the transferor. Additionally, the recipient of a loan payable on demand would have a right with an exchangeable value; the borrower would be free to turn around and transfer that property right to another. For example, Lyle could have lent to a third party, at an arm's length interest rate, the money on loan to him, to be repaid on demand, which would be made when demand was made on Lyle's loan. How much the second borrower might be willing to pay for such a loan would probably be dependent upon how long he was able to retain use of the money lent. The Commissioner proposes to value the no-interest demand loans to Lyle and Artesian in precisely the same manner.

The Commissioner argued before the Seventh Circuit that the gift could be viewed as occurring continuously during the period that the loan is outstanding and as being completed only to the extent that the lender continues to refrain from demanding repayment. The court noted that this view of the gift "is in harmony with the Commissioner's formula for measuring the amount and timing of the gift." *Id.* at 240. However, the court apparently believed that this

---

(1936)), requires that interest-free demand loans result in gifts to the extent of the value of the money lent. In any event, it is well settled that the Commissioner may change his incorrect interpretation of the law, and may even do so retroactively. Finally, even if this "taxpayer reliance" argument were otherwise of greater merit, it would not be persuasive in the instant case, since several of the loans involved were made after the issuance in 1973 of Revenue Ruling 73–61, [1973–1 Cum.Bull. 408].

Appellant's Brief at 39–40 (cross-references, certain citations and a footnote omitted).

changed the concept of the gift being considered, and that the gift tax statute would not reach such a gift; it stated, "To characterize the mere use of property as a transfer of a property right implies a broader concept of what constitutes a property right under the gift tax laws than has heretofore been recognized." *Id.* (Footnote omitted).

We disagree with the Seventh Circuit's reasoning. The gift being considered does not change merely because it is valued upon "completion" of the gift each quarter. The right to use money is the property right being transferred; the period of use of that property—the length of time the donee is given the property right—is merely the means of valuing the property. *See Crown,* 67 T.C. at 1069 (Simpson, J., dissenting).

In sum, for the reasons set forth, we are unpersuaded by the views of other courts that have faced the issue before us.[8] We believe that the gift tax statute requires a different result.[9]

## IV. CONCLUSION

We hold that gratuitous interest-free loans do have gift tax consequences.[10] Our conclusion is compelled by the gift tax statute as it is illuminated by its legislative history, established treasury regulations, ju-

---

8. In the situation before us, the taxpayers transferred the right to use money to a relative and a closely held corporation, thus implicating the gift tax. If the same transfer had been made by a corporation to an employee, the income tax would have been the relevant area of inquiry; *Martin v. Commissioner,* 649 F.2d 1133 (5th Cir. 1981), dealt with such a situation and held that the use of funds from an interest-free loan to a taxpayer does not constitute a taxable benefit. That precedent does not preclude our conclusion that taxable gifts occurred here. To the contrary, we find that the rationale of *Martin* and of the other income tax cases in this area suggests that the gift tax would be applicable.

   In *Martin,* the Fifth Circuit adopted the rationale of *Dean v. Commissioner,* 35 T.C. 1083 (1961). In *Dean* the Tax Court decided that an interest-free loan "results in no taxable gain to the borrower" and that "the Commissioner is not entitled to any increased deficiency based upon this issue." *Id.* at 1090. It seems, however, that the *Dean* court did not simply hold that the interest-free loans failed to produce income. Instead, the holding was based upon the peculiar income tax treatment of interest payments. If the receipt of an interest free loan is taxed because it is the equivalent of the payment of additional income by which to obtain the loan (*i.e.,* with which to pay interest), then a deduction based on the payment of that interest would also be available.

   In *Greenspun v. Commissioner,* 72 T.C. 931 (1979), the Tax Court explained and reaffirmed the *Dean* rationale:

   In short, by excluding from gross income the clear economic benefit realized upon the receipt of a low- or no-interest loan to a shareholder or employee, in *Dean* we properly sought to place such a transaction on a tax parity with interest-bearing loans accompanied by an increase in dividends and salary. *Id.* at 950. Under the gift tax statute, as under the income tax provisions, the "clear economic benefit" of a no-interest loan is recognized. However, unlike the income tax provisions, the gift tax statute provides no special treatment for the interest that would have been paid had the donor given cash used to obtain a loan. No offset is available to a lender, thus the taxpayers, having conferred an economic benefit upon the borrowers, must pay the gift tax that is a consequence of the transaction.

9. The conclusion that interest-free loans, whether term or demand, result in taxable gifts has received strong support from the commentators, who have sharply criticized the holdings of both the Tax Court and the court of appeals in *Crown. See, e.g.,* H. Dubroff and D. Kahn, *Federal Taxation of Estates, Gifts, and Trusts,* ¶ 20.02 (3d ed. 1980); R. Stephens, G. Maxfield & S. Lind, *Federal Estate and Gift Taxation,* ¶ 10.01[2][f] at 10-10 & S10-1 to S10-2 (4th ed. 1978 & Supp. 1 1981); K. Carey, *Interest Free Loans and the Gift Tax: Crown v. Commissioner,* 38 Ohio St.L.J. 903, 907–916 (1977). Joyce & Del Cotto, Interest Free Loans: *The Odyssey of a Misnomer,* 35 Tax L.Rev. 459, 468–469, 489–490 (1981).

10. Taxpayers urge that our holding will create administrative problems and personal burdens due to its extension to a multitude of situations. It cannot be denied that taxes do create problems and burdens. Yet taxpayers' apprehensions may be greater than warranted. The Internal Revenue Code includes a de minimis provision which excludes from gifts transfers of relatively small value. Code Section 2503(b) provides that a taxpayer may make gifts to any number of persons of any amounts up to $10,000 each without incurring any gift tax liability. In addition, should a taxpayer make a gift during one year worth more than $10,000 to any one person, that taxpayer would not incur any gift tax liability until he has exhausted his credit under Section 2505.

dicial interpretation, and the policy considerations underlying it. Remaining for consideration in this case is the value of the taxable gift that resulted when the taxpayers made interest-free loans to a relative and to a closely held corporation.[11] The case is remanded for proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

FAY, Circuit Judge, concurring:

Taxpayers have given away no property, no interests and no rights but surely they have made a gift. Judge Hill has labored hard to find some "legal support" for this conclusion. When one lets another use large sums of money for no charge, who would doubt that there has been conferred a valuable gift? The fact that the receipt given for the money is a demand note makes no difference.

Some would label the result in the Tax Court "poetic justice." The Commissioner is struggling against the web that government lawyers have been weaving for years. Tax laws are different; literal application is required—common sense is irrelevant and inappropriate. Only on this occasion, the "harsh result" denies the government revenue quite justly due.

Feeling that courts should avoid "slavish" interpretation of the Code and that the taxpayers in this instance are the ones relying on a "crabbed reading" of the words used by Congress[1], I join with Judge Hill. Any other result makes no sense.

---

11. Of course, we express no view on the valuation aspects of this case, such as the interest rates applied by the Commissioner.

1. See *Rickey v. U. S.,* 592 F.2d 1251, 1258 (5th Cir. 1979).